ROTHENBERG, J.
On May 17, 2006, this Court issued its opinion in Taylor v. State, 929 So.2d 665 (Fla. 3d DCA 2006), review denied, 952 So.2d 1191 (Fla.2007), rejecting Taylor’s facial constitutional challenge to section 893.13, Florida Statutes (2003), as amended by section 893.101, Florida Statutes (2003). Nearly five years later, the trial court below dismissed criminal felony charges against thirty-nine defendants and issued a lengthy order attempting to justify its decision to ignore Taylor, as well as other binding decisions from the district courts of appeal in this state, and instead, to adopt a contrary, non-binding decision issued by a federal trial court judge. In reversing the order under review, we reject the trial court’s contention that the issues raised in the instant cases were not *184 previously raised and decided by this Court; reject the trial court’s conclusion that it was bound by the federal trial court’s decision; and agree with counsel for both the appellant and the appellees that the trial court’s analysis and reasoning is flawed.
PROCEDURAL HISTORY
Section 893.13 prohibits the unauthorized possession, purchase, sale, manufacture, or delivery of a controlled substance; and the possession with intent to purchase, sell, manufacture, or deliver a controlled substance. In 2002, in response to the Florida Supreme Court’s interpretation of the statute in Chicane v. State, 684 So.2d 736 (Fla.1996), and later in Scott v. State, 808 So.2d 166 (Fla.2002), in which it held that knowledge of the nature of the substance was an element of these drug offenses, the Florida legislature enacted section 893.101.
893.101 Legislative findings and intent.—
(1) The Legislature finds that the cases of Scott v. State, Slip Opinion No. SC94701 [808 So.2d 166] (Fla.2002) and Chicane v. State, 684 So.2d 736 (Fla.1996), holding that the state must prove that the defendant knew of the illicit nature of a controlled substance found in his or her actual or constructive possession, were contrary to legislative intent.
(2) The Legislature finds that knowledge of the illicit nature of a controlled substance is not an element of any offense under this chapter. Lack of knowledge of the illicit nature of a controlled substance is an affirmative defense to the offenses of this chapter.
(3) In those instances in which a defendant asserts the affirmative defense described in this section, the possession of a controlled substance, whether actual or constructive, shall give rise to a permissive presumption that the possessor knew of the illicit nature of the substance. It. is the intent of the Legislature that, in those cases where such an affirmative defense is raised, the jury shall be instructed on the permissive presumption provided in this subsection.
After the legislature’s clarification of its legislative intent, that knowledge of the nature of the substance is not an element of the offense, but rather an affirmative defense that may be raised by the defendant, constitutional due process challenges were raised and ultimately rejected by the appellate courts across the state. See e.g., Williams v. State, 45 So.3d 14 (Fla. 1st DCA 2010); Johnson v. State, 37 So.3d 975 (Fla. 1st DCA 2010); Harris v. State, 932 So.2d 551 (Fla. 1st DCA 2006); Taylor, 929 So.2d at 665; Tolbert v. State, 925 So.2d 1148 (Fla. 4th DCA 2006); Wright v. State, 920 So.2d 21 (Fla. 4th DCA 2005); Smith v. State, 901 So.2d 1000 (Fla. 4th DCA 2005), review denied, 928 So.2d S36 (Fla.2006); Burnette v. State, 901 So.2d 925 (Fla. 2d DCA 2005).
On July 27, 2011, a federal trial court judge issued a ruling in Shelton v. Department of Corrections, 802 F.Supp.2d 1289 (M.D.Fla.2011), finding that although lack of knowledge is an affirmative defense to the offenses in section 893.13, because the statute does not include knowledge of the illicit nature of the substance as an element of the offense, the statute creates strict liability crimes. Thus, the federal district court analyzed the statute’s constitutionality under the three-part test established in Staples v. United States, 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994), and concluded the statute violated federal constitutional due process.
Although the challenges raised by the thirty-nine defendants below were raised in Taylor and other cases decided across the state, the trial judge, who “presumed” *185 these cases were decided on state constitutional due process grounds, not federal constitutional due process grounds, concluded they were not binding on him. Instead, the trial judge concluded he was bound by the federal district court’s decision in Shelton. The record, however, reflects that the trial judge’s assumption was incorrect, and counsel for the defendants concedes on appeal that the only federal court whose decisions bind state courts is the United States Supreme Court. See State v. Dwyer, 332 So.2d 333, 335 (Fla.1976) (“A decision of a Federal District Court, while persuasive if well reasoned, is not by any means binding on the courts of the state.”); see also Pennzoil Co. v. Texaco, Inc., 481 U.S. 1, 11, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (“When federal courts interpret state statutes in a way that raises federal constitutional questions, ‘a constitutional determination is predicated on a reading of the statute that is not binding on state courts and may be discredited at any time.’ ”) (citation omitted); Zakrzewska v. New Sch., 574 F.3d 24, 27 (2d Cir.2009) (stating that “a decision from our Court is binding only within the federal courts of our Circuit”); Doe v. Pryor, 344 F.3d 1282, 1286 (11th Cir.2003) (“The only federal court whose decisions bind state courts is the United States Supreme Court.”); People v. Williams, 16 Cal.4th 153, 66 Cal.Rptr.2d 123, 940 P.2d 710, 736 (1997) (holding that decisions of lower federal courts interpreting federal law are not binding on state courts).
THE TRIAL COURT’S ORDER
A. The trial court’s failure to follow the law
Counsel for the defendants candidly concedes on appeal that the trial court’s presumptions, analysis, and conclusions were completely erroneous, but he agrees with the result. The result, however, was a dismissal of the charges based on the defendants’ facial constitutional challenge despite binding precedent from this Court and other district courts of appeal. That result can never be “the correct result.” The correct result would have been to deny the motions to dismiss on the authority of Taylor. The trial court was then free to express its disagreement with Taylor and to request reconsideration of the holding in Taylor en banc. While a lower court is free to disagree and to express its disagreement with an appellate court ruling, it is duty-bound to follow it. As the Florida Supreme Court has repeatedly articulated, “[t]he decision of the district courts of appeal represent the law of Florida unless and until they are overruled by this Court.” Stanfill v. State, 384 So.2d 141, 143 (Fla.1980). “Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts.” Pardo v. State, 596 So.2d 665, 666 (Fla.1992).
The purpose of this rule was explained by the Fourth District in State v. Hayes:
The District Courts of Appeal are required to follow Supreme Court decisions. As an adjunct to this rule it is logical and necessary in order to preserve stability and predictability in the law that, likewise, trial courts be required to follow the holdings of higher courts — District Courts of Appeal ... if the district court of the district in which the trial court is located has decided the issue, the trial court is bound to follow it.
Pardo, 596 So.2d at 666-67 (quoting State v. Hayes, 333 So.2d 51, 53 (Fla. 4th DCA 1976)); see also Dwyer, 332 So.2d at 335 (“Where an issue has been decided by the Supreme Court of the State, the lower courts are bound to adhere to the Court’s ruling when considering similar issues, *186 even though the court might believe that the law should be otherwise.”).
B. The trial court’s justification for failing to follow binding precedent
Perhaps recognizing its mandate to follow the law, the trial court justified its failure to do so based on a false “presumption” that, even if true, would not have provided the justification sought. The “presumption” relied on by the trial court was that although this Court in Taylor and the other district courts, such as the First District in Johnson and Harris, the Second District in Burnette, and the Fourth District in Wright, rejected facial challenges to the constitutionality of section 893.13, as amended by section .893.101, on due process grounds, none of these cases “particularizes the source of due process upon which it relies.”
Thus, the trial court reasoned: -
In the absence of such particularization I am obligated as a Florida trial court to presume that Florida appellate courts relied upon a Florida-law-based guarantee of due process.... No Florida case has decided the issue presently before me: whether § 893.13 is unconstitutional by operation of the Hth Amendment to the Federal Constitution.
(first emphasis added).
First, the relied on presumption was erroneous. Although the Taylor opinion makes no specific reference as to whether the analysis was performed under Florida or federal constitutional due process, a review of the briefs provided in the appellate record reflect that the claims and due process analysis were predicated on both the state and federal constitutions. Taylor, in his initial brief, prefaced his due process claim on the fundamental right under both federal and Florida law that no person shall be deprived of life or liberty without full due process of law; relied on a number of United States Supreme Court opinions addressing federal due process law; and argued these cases were controlling. The State’s response specifically addressed Taylor’s due process arguments, arguing that “the statute does not violate the due process clauses of the Florida and United States Constitutions.”
Second, the First District specifically relied on both Florida and United States Supreme Court cases in addressing the substantive due process claim raised by the defendant in Johnson, 37 So.3d at 975; the Second District cited to United States Supreme Court case law in defining the due process requirements in Burnette, 901 So.2d at 927; and the Fourth District specifically referenced both the Florida constitution and the Fifth Amendment due process clause of the United States constitution in performing its due process analysis in Wright, 920 So.2d at 24.
More importantly, whether this Court or the other district courts of appeal examined the facial constitutional due process challenges to this statute only under Florida law, or additionally considered federal law, is irrelevant. First, the due process provision of Florida’s constitution is patterned after the due process provision of the federal constitution. D.P. v. State, 705 So.2d 593, 599 (Fla. 3d DCA 1997); see also Cash v. Culver, 122 So.2d 179, 182 (Fla.1960). Second, it is a clear tenet under our system of government that while states may place more rigorous restraints on government intrusion than required by the federal constitution, statutes, or case law, states may not limit personal freedoms beyond that which the federal constitution permits. See Warner v. City of Boca Raton, 887 So.2d 1023, 1030 (Fla.2004) (“In interpreting the scope of constitutional rights, this Court has stated that in any state issue, the federal constitution represents the ‘floor’ for basic freedoms, *187 and the state constitution represents the ‘ceiling.’ ”). The Florida Supreme Court explained:
[O]ur system of constitutional government in Florida is grounded on a principle of “robust individualism” and that our state constitutional rights thus provide greater freedom from governmental intrusion into the lives of citizens than do their federal counterparts:
Federal and state bills of rights thus serve distinct but complementary purposes. The federal Bill of Rights facilitates political and philosophical homogeneity among the basically heterogeneous states by securing, as a uniform minimum, the highest common denominator of freedom that can prudently be administered throughout all fifty states. The state bill of rights, on the other hand, express the ultimate breadth of the common yearnings for freedom of each insular state population within our nation.... [T]he federal Constitution ... represents the floor for basic freedoms; the state constitution, the ceiling.
Armstrong v. Harris, 773 So.2d 7, 17 (Fla.2000) (quoting Traylor, 596 So.2d at 962).
Thus, if this Court concluded in Taylor that section 893.13, as amended by section 893.101, did not violate Florida constitutional due process guarantees, then it necessarily follows that the amended statute also passed federal constitutional due process muster.
C. The trial court relied on Shelton, a flawed federal trial court order
Rather than apply Florida decisional law, the trial court, instead, incorrectly concluded it was bound by an order issued by a federal trial court, and even if not bound, found the federal order persuasive. Specifically, the trial court found persuasive the Shelton court’s findings that: (1) section 893.13, as amended, creates strict liability crimes; (2) the due process challenge to section 893.13 must be analyzed under Staples; and (3) the statute fails under the Staples test. As was the federal trial court’s order, the circuit court trial judge’s analysis and conclusions are similarly flawed.
1. Section 893.13, as amended, does not create strict liability crimes.
In its order, the trial court boldly states: “[T]hat § 893.13 defines strict liability crimes is really not open to discussion.” The trial court is incorrect. A strict liability statute imposes criminal liability regardless of fault. For example, statutory rape is a strict liability crime. See §§ 794.05, .021, Florida Statutes (2012); Hodge v. State, 866 So.2d 1270, 1272 (Fla. 4th DCA 2004) (“[T]he legislature left no doubt as to its intention that [section 794.021] be treated as a strict liability crime for which the State was not required to prove scienter ... [and] unequivocally provides that ignorance is not a defense to the crime[.]”). Under section 794.05, “[a] person 24 years of age or older who engages in sexual activity with a person 16 or 17 years of age commits a felony of the second degree.” These statutes do not require the State to prove the defendant’s knowledge of the minor’s age, and ignorance or belief as to the minor’s age is no defense.
Section 893.13 does not create strict liability crimes because, although scienter, or “mens rea,” is not an element of these offenses, the statute provides that the defendant’s lack of knowledge may be raised as an affirmative defense. See Flagg v. State, 74 So.3d 138, 141 (Fla. 1st DCA 2011). For a strict liability offense, lack of knowledge is not an available defense. See Kennedy v. Louisiana, 554 U.S. 407, 423, 128 S.Ct. 2641, 171 L.Ed.2d *188 525 (2008) (concluding that because mistake regarding the minor’s age was not a defense, the statute imposed strict liability); Levinson, Laurie L., Good Faith Defenses: Reshaping Strict Liability Crimes, 78 Cornell L. Rev. 401, 417 & n. 86 (1993) (defining strict liability as “absolute liability” where not only is there no mens rea element, there also is no mens rea defense).
Section 893.13, instead, creates general intent crimes. See Wright, 920 So.2d at 24 (“The statute does two things: it makes possession of a controlled substance a general intent crime ... and, second, it allows a defendant to assert lack of knowledge as an affirmative defense.”). Because, the premise upon which the trial judge relied was incorrect, so too was his analysis.
2. The analysis performed in Staples and the trial court are inapplicable to section 893.13.
As counsel for the defendants candidly concedes on appeal, the Staples analysis applied by the Shelton court and relied on by the trial court has no applicability in analyzing section 893.13 under the defendants’ constitutional due process challenge. Unlike section 893.13, the Staples Court was tasked with the responsibility of construing a statute that was silent concerning the mens rea required to violate the statute. Staples, 511 U.S. at 605, 114 S.Ct. 1793. In its analysis, the Staples Court noted that, in prior cases, it had concluded that “some indication of congressional intent, express or implied, is required to dispense with mens rea as an element of a crime ... [and] we have inferred from silence that Congress did not intend to require proof of mens rea to establish an offense.” Id. at 606, 114 S.Ct. 1793. When the Staples Court interpreted “whether congressional silence concerning the mental element of the offense should be interpreted as dispensing with conventional mens rea requirements,” it generally “relied on the nature of the statute and the particular character of the items regulated.” Id. at 607,114 S.Ct. 1793.
After performing its analysis, the Staples Court examined the severity of the punishment, the attendant social stigma, and whether the statute punishes inherently legal activity, and concluded Congress did not intend to dispense with mens rea as an element to the statute at issue. The Court also noted that its “holding is a narrow one ... [and its] reasoning [was based] upon a commonsense evaluation of the nature of the particular device or substance Congress has subjected to regulation and the expectations that individuals may legitimately have in dealing with the regulated items.” Id. at 619, 114 S.Ct. 1793. The Staples Court, therefore, concluded that based on the penalty to be imposed, Congress did not intend to eliminate mens rea as an element of the offense. Id.
The Staples “test” was crafted to assist courts in interpreting legislative intent when a statute is unclear as to whether mens rea is an element of the offense, not to analyze the constitutionality of a statute. Because the legislative intent in section 893.13 is clear, the Staples test is inapplicable, and the trial court’s lengthy analysis of the statute under Staples was erroneous.
THE DEFENDANTS’ DUE PROCESS CHALLENGE
In Taylor, this Court previously upheld the constitutionality of section 893.13, as amended, in a facial challenge brought under due process concerns identical to those raised in the thirty-nine motions filed in the trial court below and raised here on appeal. This panel is not free to disregard, or recede from, that *189 decision; only this Court, sitting en banc, may recede from an earlier opinion. We, however, do note that while “criminal sanctions are ordinarily reserved for acts of intentional misconduct,” State v. Giorgetti 868 So.2d 512, 516 (Fla.2004), the legislature, and other legislative bodies, in the exercise of their sovereign police powers, have in very limited circumstances enacted criminal statutes which do not include mens rea as an element of the offense, and these statutes, when legislative intent is clearly stated, have withstood constitutional challenge.
For example, the Florida Supreme Court upheld the constitutionality of sections 794.05 and 794.021, imposing strict liability for statutory rape where mens rea is not an element of the offense, and lack of knowledge or mistake may not be raised as an affirmative defense. Similarly in D.P., 705 So.2d at 598, this Court concluded that an anti-graffiti ordinance enacted by Miami-Dade County did not offend due process under either the Florida or the federal constitution. The ordinance in question imposed criminal penalties for a minor’s possession of spray paint or jumbo markers without requiring the State to prove the minor had any criminal intent. Id. at 595. In rejecting D.P.’s facial due process challenge, this Court noted the lower court’s finding that no fundamental right was implicated, and thus the Court’s review was limited to the rational basis test. This Court concluded that the legislation was rationally related to a legitimate governmental purpose (to control the blight of graffiti), and the ordinance was less restrictive than measures imposed and upheld in a similar case.[1] Id. at 597; see also Forfeiture of 1969 Piper Navajo, 592 So.2d 233, 235 (Fla.1992) (holding that due process requires that the penal statute shall not be unreasonable, arbitrary, or capricious, and the means - selected by the legislature must bear a reasonable and substantial relation to the purpose sought to be attained, thus the question of due process as applied to a penal statute is whether the provision is rationally related to its purpose).
The United States Supreme Court simultaneously dealt with similar due process challenges to a federal statute prohibiting the sale or delivery of opium and cocaine where the statute did not require intent or knowledge as an element of the offense in United States v. Behrman, 258 U.S. 280, 42 S.Ct. 303, 66 L.Ed. 619 (1922), and United States v. Balint, 258 U.S. 250, 42 S.Ct. 301, 66 L.Ed. 604 (1922). In rejecting Balint’s due process challenge, the United States Supreme Court stated: “It has been objected that punishment of a person for an act in violation of law when ignorant of the facts making it so, is an absence of due process of law. But that objection is considered and overruled in Shevlin-Carpenter Co. v. Minnesota, 218 U.S. 57, 30 S.Ct. 663, 54 L.Ed. 930 [ (1910) ].” Balint, 258 U.S. at 252, 42 S.Ct. 301. The “manifest purpose is to require every person dealing in drugs to ascertain at his peril whether that which he sells comes within the inhibition of the statute, and if he sells the inhibited drug in ignorance of its character, to penalize him.” Id. at 254, 42 S.Ct. 301.
Additionally, a party challenging the facial constitutionality of a statute must establish that there is “no set of circumstances” under which the statute would be valid. United States v. Salerno, 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Clearly, in most situations, the defendant is fully aware that the substance he is manufacturing, purchasing, selling, or has in his possession, is *190 a controlled substance, and, therefore, a facial challenge to section 893.13 should fail under a Salerno analysis.
CONCLUSION
The due process facial challenge raised in the instant cases was previously raised and decided by this Court in Taylor and by the other district courts of appeal in this state in Williams, Johnson, Harris, Tolbert, Wright, Smith, and Burnette. The trial court was therefore duty-bound to follow binding precedent, not ignore it.
Reversed.

. Nat'l Paint & Coatings Ass’n v. City of Chicago, 45 F.3d 1124 (7th Cir.1995).