PALMER, J.
The State appeals the trial court’s order dismissing the information filed against D.C. (defendant). Determining that the information sufficiently alleges unlawful *441 sexual intercourse by a person knowingly infected with the human immunodeficiency virus (HIV), we reverse.
The defendant was charged with one count of unlawful sexual intercourse by a person knowingly infected with HIV, as prohibited by sections 384.24(2) and 384.34(5), Florida Statutes (2008). The defendant filed a motion to dismiss the information, contending that sexual intercourse, as that term is used in section 384.24(2), takes place only when the female sex organ is penetrated by the male sex organ and, therefore, the statute did not apply to the defendant’s alleged conduct, which involved homosexual oral and anal sex. After considering the argument of counsel, the trial court granted the motion and entered a dismissal order.
The State contends that dismissal was not warranted in this case. We agree.
The defendant was charged with violating section 384.24(2), which reads:
384.24. Unlawful acts
[[Image here]]
(2) It is unlawful for any person who has human immunodeficiency virus infection, when such person knows he or she is infected with this disease and when such person has been informed that he or she may communicate this disease to another person through sexual intercourse, to have sexual intercourse with any other person, unless such other person has been informed of the presence of the sexually transmissible disease and has consented to the sexual intercourse.
(Emphasis added.) The only question raised in this appeal is what the term sexual intercourse means as used in this statute, since the term is not defined in the statute or anywhere else in chapter 384. Both parties maintain that the Legislature’s intent concerning the meaning of the term sexual intercourse is clear from the unambiguous language of the statute and that the statute must be given its plain and obvious meaning.[1]
Legislative intent is the polestar that guides statutory interpretation. Bautista v. State, 863 So.2d 1180, 1185 (Fla.2003). To discern legislative intent, courts first look to the language of the statute, because legislative intent is determined primarily from the statute’s text. Anderson v. State, 87 So.3d 774, 777 (Fla.2012).
If statutory language is “clear and unambiguous and conveys a clear and definite meaning, there is no occasion for resorting to the rules of statutory interpretation and construction; the statute must be given its plain and obvious meaning.” Holly v. Auld, 450 So.2d 217, 219 (Fla.1984) (quoting A.R. Douglass, Inc. v. McRainey, 102 Fla. 1141, 137 So. 157, 159 (1931)).
Diamond Aircraft Indus., Inc. v. Horowitch, 107 So.3d 362, 367 (Fla.2013). See *442 also Paul v. State, 112 So.3d 1188, 2013 WL 1457839 (Fla. Apr. 11, 2013); Hickman v. Milsap, 106 So.3d 513 (Fla. 5th DCA 2013). Courts may determine the plain and obvious meaning of a statute’s text by referring to dictionaries. W. Fla. Reg’l. Med. Ctr., Inc. v. See, 79 So.3d 1, 9 (Fla.2012); see State v. Mitro, 700 So.2d 643, 645 (Fla.1997); Green v. State, 604 So.2d 471, 473 (Fla.1992).
Webster’s Third New International Dictionary defines sexual intercourse as including heterosexual vaginal intercourse as well as “intercourse involving genital contact between individuals other than penetration of the vagina by the penis.” Webster’s Third New International Dictionary Unabridged 2082 (1976). Similarly, Merriam-Webster’s Collegiate Dictionary defines sexual intercourse as including vaginal intercourse and “intercourse (as anal or oral intercourse) that does not involve penetration of the vagina by the penis.” Merriam-Webster’s Collegiate Dictionary 1141 (11th ed. 2012). The American Heritage Dictionary defines sexual intercourse as including “sexual activity that includes insertion of the penis into the anus or mouth.” The American Heritage Dictionary of the English Language 1606 (5th ed. 2011). The World Book Dictionary defines the term as “the uniting or joining of sexual organs.” World Book Dictionary 1909 (2011). Notably, our research did not disclose any dictionary definition that limited sexual intercourse to heterosexual vaginal intercourse, and the additional online dictionaries cited by the defendant do not so limit the definition. See http://lexic.us/definition-of/sexual_ intercourse (defining sexual intercourse as sexual interaction, usually involving genital and/or anal and/or oral penetration, between at least two organisms); http:// dictionary.reference.com/browse/sexual-l-intercourse (defining sexual intercourse as including vaginal intercourse and sexual union between humans involving genital contact other then vaginal penetration by the penis). As such, we conclude that the plain and ordinary meaning of the term sexual intercourse, as used in section 384.24(2), includes vaginal, anal, and oral intercourse between persons, regardless of their gender.
In so ruling, we reject the defendant’s contention that the statute’s plain and ordinary meaning is limited to heterosexual vaginal intercourse. Such an interpretation would lead to “a result clearly contrary to legislative intent.” State v. Burns, 875 So.2d 408, 410 (Fla.2004).
In Deason v. Florida Department of Corrections, 705 So.2d 1374, 1375 (Fla.1998), our Supreme Court explained that
the primary and overriding consideration in statutory interpretation is that a statute should be construed and applied so as to give effect to the evident intent of the legislature regardless of whether such construction varies from the statute’s literal meaning. In other words, criminal statutes are not to be so strictly construed as to emasculate the statute and defeat the obvious intention of the legislature.
Section 384.24(2) falls within chapter 384, which is entitled the Control of Sexually Transmissible Disease Act. § 384.21, Fla. Stat. (2008). Section 384.22 sets forth the Legislature’s intent in enacting chapter 384:
384.22. Findings; intent
The Legislature finds and declares that sexually transmissible diseases constitute a serious and sometimes fatal threat to the public and individual health and welfare of the people of the state and to visitors to the state. The Legislature finds that the incidence of sexually transmissible diseases is rising at an *443 alarming rate and that these diseases result in significant social, health, and economic costs, including infant and maternal mortality, temporary and lifelong disability, and premature death.... The Legislature finds that medical knowledge and information about sexually transmissible diseases are rapidly changing. The Legislature intends to provide a program that is sufficiently flexible to meet emerging needs, deals efficiently and effectively with reducing the incidence of sexually transmissible diseases, and provides patients with a secure knowledge that information they provide will remain private and confidential.
Thus, the Legislature stated that its purpose in enacting chapter 384 was to establish a flexible framework within which State officials can address the rapidly changing medical knowledge about sexually transmissible diseases, in an effort to efficiently and effectively reduce the incidence of such diseases in Florida.
The portion of the Act at issue here, section 384.24(2), addresses the transmission of HIV through sexual contact. The Centers for Disease Control and Prevention explains that HIV can be transmitted through anal, vaginal, and to a lesser degree, oral sex:
In the United States, HIV is most commonly transmitted through specific sexual behaviors (anal or vaginal sex) or sharing needles with an infected person. It is less common for HIV to be transmitted through oral sex or for an HIV-infected woman to pass the virus to her baby before or during childbirth or after birth through breastfeeding or by pre-chewing food for her infant.
http://www.cdc.gov/hiv/resources/qa/ transmission.htm. See also www.aids.org/ topics/aids-faqs/how-is-hiv-transmitted; http://www.mayoclinic.com/health/hiv-aids/ DS00005/DSECTION=causes. Thus, the defendant’s interpretation of the statute as being limited to heterosexual vaginal sex runs counter to the Legislature’s intent to efficiently and effectively reduce the incidence of sexually transmitted diseases in Florida.
In dismissing the information, the trial court cited L.A.P. v. State, 62 So.3d 693 (Fla. 2d DCA 2011). In that case, the defendant contended that section 384.24(2) requires proof of sexual intercourse between a man and a woman, and thus, the statute did not apply to the homosexual sex acts she was charged with committing. The Second District agreed and reversed her judgment and sentence. We disagree with the conclusion reached by the Second District and certify conflict with L.A.P.[2]
Accordingly, the trial court’s dismissal order is reversed, and this matter is remanded for further proceedings.
REVERSED and REMANDED; CONFLICT CERTIFIED.
GRIFFIN and LAWSON, JJ„ concur.

. Although the defendant invites the court to apply rales of statutory construction by citing definitions found in unrelated chapters of the Florida statutes (an incest statute and a paternity statute) and in Williams v. State, 92 Fla. 125, 109 So. 305 (1926), we reject this invitation because application of rules of statutory construction is not appropriate when interpreting an unambiguous term in a statute. See Raymond James Fin. Servs., Inc. v. Phillips, 110 So.3d 908, 910 (Fla. 2d DCA 2011) (explaining that, if the language of a statute is ambiguous and lacking a statutory definition, then courts must use the rales of statutory construction to resolve the ambiguity, including resorting to case law or other statutory provisions which define the term) quashed on other grounds, 38 Fla. L. Weekly S325 (Fla. May 16, 2013); T.M.H. v. D.M.T., 79 So.3d 787, 791 (Fla. 5th DCA 2011) (recognizing that reliance on definitions found in case law constitutes application of a rale of statutory construction).

. The trial court properly followed LAP. because it was bound to apply the only case law in Florida on this issue. State v. Washington, 114 So.3d 182, 2012 WL 2400879 (Fla. 3d DCA June 27, 2012).