SHEPHERD, C.J.,
dissenting.
“We do not inquire what the legislature meant; we ask only what the statute means.” So wrote Justice Oliver Wendell Holmes in The Theory of Legal Interpretation,,[6] The majority argues that in 1986, when the Florida Legislature amended section 384.24(2) to substitute the gender neutral word “person” for “female ... with any male person” and vice versa, it must have “meant” to expand the application of section 384.24(2) to include sexual relations between two males or two females. The focus of the majority obscures the real issue: what is the meaning of “sexual intercourse.”
The phrase “sexual intercourse” has appeared in every iteration of the laws of this state relating to the regulation and treatment of sexually transmitted diseases *1096 since Florida first made it unlawful for “any one ... to expose another” to one of the then known sexually transmitted diseases. See Ch. 7829, § 1, Laws of Fla. (1919). For sixty-six years, from 1919 through 1985, this criminal law read as follows with minor modifications:
Section 1. That Syphilis, Gonorrhea and Chancroid are hereby designated as venereal diseases and are declared to be contageous infections, communicable and dangerous to the public health. It shall be unlawful for any one infected with either of these diseases to expose another to infection.
Section 2. It shall be unlawful for any female afflicted with any venereal disease, who knowing of such condition, to have sexual intercourse with any male person, or for any male person afflicted with any venereal disease, who knowing of such condition, to have sexual intercourse with any female.
Section 3. Any person who shall violate any of the provisions of Section one, and two of Section one, and two of this Act, shall be guilty of a misdemeanor and on conviction shall be punished for a misdemeanor.
Ch. 7829, §§ 1-3, Laws of Fla. (1919) (emphasis added).[7]
In 1986, the Florida legislature revised the statute as part of a comprehensive reorganization, restatement and updating of Chapter 384 of the Florida Statutes. See Ch. 86-220, § 90, Laws of Fla. The revisions were substantial. Some new sections were added to the new law, notably including a “Definitions” section for the first time in the history of the statute. See § 384.23, Fla. Stat. (1986).[8] The provision making any person suspected of being afflicted with a sexually transmitted disease “subject to physical examination,” which had remained unchanged since 1919, was revised to more clearly safeguard individual liberty interests as they are understood today. Compare Ch. 7829, Laws of Fla. (1919) with § 384.27, Fla. Stat. (1986). Similarly, the physician diagnosis and treatment reporting requirements of the law were revised to reflect modern-day sensibilities relating to personal privacy. See § 384.25, Fla. Stat. (1986). Gender identifiers, “female” and “male person” in section 384.24 were replaced by the gender-neutral word “person.” Notably, however, the phrase “sexual intercourse” remained in section 384.24 unchanged. After the 1986 revisions to Chapter 384, section 384.24 read as follows:
384.24. Unlawful acts
It is unlawful for any person who has chancroid, gonorrhea, granuloma inguinale, lymphogranuloma venereum, genital herpes simplex, chlamydia, nongonococcal urethritis (NGU), pelvic inflammatory disease (PID)/acute sal-pingitis, syphilis, or human T-lympho-tropic virus type III (HTLV-III) infection, when such person knows he or she is infected with one or more of these diseases and when such person has been informed that he or she may communicate this disease to another person through sexual intercourse, to have sexual intercourse with any other person, unless such *1097 other person has been informed of the presence of the sexually transmissible disease.[9]
Ch. 86-220, Laws of Fla. (eff. July 1, 1986) (emphasis added). The legislature used the phrase “sexual intercourse” not once, but twice in the 1986 revision to Chapter 384.24. Cfi Ch. 7829 Laws of Fla. (1919). It is hard to argue the legislature was ignorant of its existence in the statute. Perhaps more significantly, it omitted to employ the obvious, direct method of proclaiming its intent by defining the phrase in the new section of Chapter 384 specifically created for “Definitions.”
The majority excuses the legislature’s failure to act by holding that the legislature implicitly re-defined the phrase “sexual intercourse” by substituting the gender neutral term “person” for the gender specific terms “male” and “female.” I believe this is a stretch too far. First, the substitution on which the majority places its reliance was made during a time when the gender neutralization of state statutes was in vogue. See Fla. HB 176 (1984); Fla. SB 41 (1984); Fla. SB 282 (1983) (proposed bills for creation of committees to eradicate, insofar as possible, sex discrimination in Florida Statutes) (available from Fla. Dep’t of State, Div. of Archives); Report of the Fla. Supreme Court Gender Bias Study Commission (March 1990)[10]; Lynn Hecht Schafran, Gender and Justice: Florida and the Nation, 42 Fla. L. Rev. 181 (1990). Florida completed this process with a comprehensive amendment to the Florida Statutes in 1995 and 1997. See Chs. 95-147-.148, Laws of Fla. (1995); Chs. 97-102-.103, Laws of Fla. (1997).[11]
Second, except for the recently issued case, State v. D.C., 114 So.3d 440 (Fla. 5th DCA 2013), the case law both before and after the 1986 reorganization and restatement of Chapter 384 defined the phrase “sexual intercourse” as the act of placing a male’s penis inside a female’s vagina. See State v. Bowden, 154 Fla. 511, 18 So.2d 478, 480 (1944) (concluding that “penetration of the female private parts by the private male organ” is an essential element of “carnal intercourse with an unmarried female of previous chaste character under the age of eighteen years”); Williams v. State, 92 Fla. 125, 109 So. 305, 306 (1926) (“[sjexual intercourse means actual contact of the sexual organs of a man and a woman and an actual penetration into the body of the latter” (citation omitted)); L.A.P. v. State, 62 So.3d 693 (Fla. 2d DCA 2011); Green v. State, 765 So.2d 910, 913 (Fla. 2d DCA 2000). Importantly, this court likewise recognized the phrase “sexual intercourse” to mean “actual contact of the sexual organs’ of two persons and penetration of the body of another” without linguistic hesitation or remark just three years before the legislature revised and restated Chapter 384 in 1986. See Lanier v. State, 443 So.2d 178, 183 (Fla. 3d DCA *1098 1983) (quoting Williams v. State, 109 So. at 306, quashed, 464 So.2d 1192 (Fla.1985)). The majority trips too lightly over this authority.
Instead, the majority proclaims the superiority of the dictionary over case law, and too hastily dashes to its goal. Setting aside the palpable question whether an inferior court can resort to a dictionary when clear precedent from our Supreme Court conflicts, see Hoffman v. Jones, 280 So.2d 431, 434 (Fla.1973) (admonishing district courts against “overruling” the Supreme Court), the majority misreads the second definition of “sexual intercourse” in the 1986 edition of Merriam-Webster’s unabridged dictionary for the simple reason that the lexicographers of that day limited the scope of the second definition to “genital contact,” the first word of which has its first definition in that same edition of Merriam-Webster’s unabridged dictionary as “GENERATIVE,” and the second being “of, relating to, being a sexual organ,” which in turn is defined as “an organ of the reproductive system; esp: an external generative organ — often used in pi.; compare “genitalia.” The definition of “genitalia” in turn comes full circle to the definition of “sexual organ,” namely “the organs of the reproductive system; esp.: the external genital organs.” The word “genital” in the 1986 unabridged dictionary therefore limits the acts included in the definition of “sexual intercourse” to those acts relating to male and, to a lesser extent, female reproductive organs. The majority’s resort to the dictionary over case law to decide this case, even if appropriate, provides no assistance to the majority in this case.[12]
It might be that the legislature simply overlooked the need to expand the definition of sexual intercourse in section 384.24 in 1986.[13] Or, it might have been that twenty-five years ago, there were insufficient votes in the state legislature to expand the definition. I prefer the former explanation. If I were a legislator, I would vote to amend the statute to clearly define the crime. Other state legislatures with nearly identical state statutes have done so. See Ga. Code Ann. § 16-5-60 (2003) (making it a felony for “an HIV infected person ... [to] ... [k]nowingly engage[] in sexual intercourse or perform! ] or submit to any sexual act involving the sexual organs of one person and the mouth or anus of another person [without] disclosing] to the other person the fact of that person’s being an HIV infected person prior to that intercourse or sexual act”); S.C. Code Ann. § 44-29-145 (1990) (making it a felony “for a person who knows that he is infected with Human Immunodeficiency Virus (HIV) to ... knowingly engage in sexual intercourse, *1099 vaginal, anal or oral, with another person without first informing that person of his HIV infection”); S.D. Codified Laws § 22-18-81 (2000) (making it a crime for “[a]ny person who, knowing himself or herself to be infected with HIV, [to] intentionally expose another person to infection by ... [e]ngaging in sexual intercourse or other intimate physical contact with [that] person”); Va. Code. Ann. § 18.2-67-4:1 (West 2004) (making it a Class 1 misdemeanor for “[a]ny person who, knowing he is infected with HIV ... [to have] sexual intercourse, cunnilingus, fellatio, anallingus or anal intercourse with another person without having previously disclosed the existence of his infection to the other person”); Wash. Rev.Code §§ 9A.36.011, 44.010 (1997) (making it a first degree assault for a person “with intent to inflict great bodily harm ... [to] expose[ ] or transmit[ ] the human immunodeficiency virus” to another and defining “sexual intercourse” to include “any act of sexual contact between persons involving the sex organs of one person and the mouth or anus of another whether such persons are of the same or opposite sex”). Notably, these statutes apply to “persons” just like the Florida statute.
The temptation to exercise will over judgment in this case is great. However, “judicial review of legislation does not carry with it a license to modify or amend legislative enactments.” Frank v. Fischer, 46 Wash.App. 133, 730 P.2d 70, 73 (1986), aff'd, 108 Wash.2d 468, 739 P.2d 1145 (1987); see also Fields v. Kirton, 961 So.2d 1127, 1130 (Fla. 4th DCA 2007) (“It is not the function of the courts to usurp the constitutional role of the legislature and judicially legislate that which necessarily must originate, if it is to be law, with the legislature.). Courts do legislatures no favors when they do their work for them. See Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 330, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006) (expressing wariness of legislatures who would rely on the court’s intervention in conforming laws to constitutional requirements); see also David H. Gans, Severability as Judicial Lawmaking, 76 Geo. Wash. L. Rev. 639, 644 (2008) (“Over time, the legislature may come to depend on the courts to fix statutes rather than do[ ] the hard work necessary to enact a properly tailored statute in the first instance. Politically, legislators may prefer this arrangement, for it frees them to pass the statute they want, knowing that courts will save as much of their handiwork as they can. But this arrangement breeds an unhealthy dependency on courts and results in a loss of accountability.”). “We have no more right to correct the mistakes of the Legislature than it would have to correct ours.” State v. Bratton, 90 Neb. 382, 133 N.W. 429, 431 (1911). This is especially so in this criminal case, where the rule of lenity must apply, whether we wish it to or not. See § 775.021(1), Fla. Stat. (2012).
I would affirm the decision of the trial court in this case.

. Holmes, Oliver Wendell, The Theory of Legal Interpretation, 12 Harv. L. Rev. 417, 419 (1899).

. The minor modifications to the criminal provision of the statute during the time period are found in Combined General Laws of Florida, 7735 (1927); Ch. 71-136, § 333.

. The other completely new sections were section 384.22 entitled "Findings; intent;” section 384.31 entitled "Serological testing of pregnant women; duty of attendant;” and section 384.33 authorizing the Department of Health and Rehabilitative Services to adopt rules to carry out the provisions of Chapter 384.

. The penalty provision was moved to section 384.34 and read as follows:
384.34 Penalties.—
(1) Any person who violates the provision of s. 384.24, s. 3824.26, or s. 384.29 is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.

. available at http: //www.floridasupreme court.org/pub_info/documents/bias. pdf#xml=http://199.242.69.43/texis/searcb/ pdfhi.txt? query=report + of + florida + supreme + court + gender+bias + study+ commission+march +1990&pr=Florida+ Supreme+Court&prox=page&rorder= 1000&rprox= 1000&rdfreq= 500&rwfreq= 500&rlead= 1000&rdepth=0&sufs=2& order=r&cq=&id=5 lbf444bl 1.

.Prior to 1999, Florida statutes were revised every two years, and, because of the extent of the required gender-neutralization of all statutes, the process required two session laws. See, e.g., Fla. Stat., Preface at vi-ix (2012).

. That the majority misreads the definition is further confirmed by the fact that later editions of Merriam-Webster's Collegiate Dictionary contain the definition wished by the majority. See Merriam-Webster’s Collegiate Dictionary (2013) (defining "sexual intercourse" as "intercourse (as anal or oral intercourse) involving genital contact between individuals other than penetration of the vagina by the penis”) (emphasis added). Prior to 2003, the definition in Merriam Webster's Collegiate Dictionary was the same as that in the unabridged. Moreover, the definition cited by the majority actually first appears in Merriam-Webster’s unabridged dictionary in 1976, not 1986, as intimated by the majority. For these additional reasons, it cannot be said that “anal and oral intercourse" are included sub silencio in the 1986 unabridged.

. The 1986 regular session of the Florida legislature commenced on April 8, 1986, and adjourned sine die on June 7, 1986. Fla. Legis., History of Legislation, 1986 Regular Session at 1, CS for HB 1313. The revised and restated Chapter 384 was passed by the Florida legislature on June 7, the last day of the 1986 session. See Fla. CS for HB 1313 § 384 (1986).