# Third District Court of Appeal

## State of Florida

Opinion filed December 27, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D17-452
Lower Tribunal Nos. 17-376 & 17-1770

_____

**Daniel Junior, etc.,**
Appellant,

vs.

**James LaCroix,**
Appellee.

An Appeal under Florida Rule of Appellate Procedure 9.315(a) from the Circuit Court for Miami-Dade County, Milton Hirsch, Judge.

Abigail Price-Williams, Miami-Dade County Attorney, and Michael B. Valdes and Oren Rosenthal, Assistant County Attorneys, for appellant.

Woodward and Reizenstein, P.A., and Philip L. Reizenstein and Bhakti Kadiwar, for appellee.

Chad A. Reader, William C. Peachey, Erez Reuveni and Vinita B. Andrapalliyal (Washington, D.C.), for the United States of America as *amicus curiae*.

Before ROTHENBERG, C.J., and FERNANDEZ and SCALES, JJ.

SCALES, J.

Appellant Daniel Junior, the director of the Miami-Dade County Corrections and Rehabilitation Department ("Department"), appeals the trial court's writ of habeas corpus that, *inter alia*: (1) ordered the release of the appellee James La Croix, notwithstanding that LaCroix was subject to a federal immigration detainer; and (2) declared Miami-Dade County's policy toward federal immigration detainers to be unconstitutional under the Tenth Amendment of the United State Constitution. Because the trial court lacked jurisdiction to adjudicate the constitutionality of the subject federal immigration detainer, we reverse and quash the writ.[1]

## I.     Facts

### A. LaCroix held in custody

Twice in January of 2017, LaCroix was charged with driving with a suspended license while an habitual traffic offender, a third degree felony pursuant to section 322.34(5) of the Florida Statutes. LaCroix was out on felony bond for the first offense when he was arrested for the second offense. Upon this second arrest, he was placed in the custody of the Department. LaCroix pleaded guilty to each offense, and

---

[1] Because LaCroix has been deported pursuant to the subject federal immigration detainer, LaCroix argues that Department's appeal is moot. Notwithstanding LaCroix's mootness claim, we examine the legal appropriateness of the writ because the issues implicated by it are likely to recur. "It is well settled that mootness does not destroy an appellate court's jurisdiction . . . when the questions raised are of great public importance or are likely to recur." Holly v. Auld, 450 So. 2d 217, 218 n.1 (Fla. 1984).

on February 28, 2017, the trial court adjudicated him guilty and sentenced him to time served.

Thus, as of February 28, 2017, LaCroix was eligible for release from jail. While he was in custody, however, the Department of Homeland Security (DHS) transmitted to Department a DHS Form I-247X, commonly known as a federal immigration detainer. In this form, an officer of the United States Immigration and Customs Enforcement represented that the federal government suspected that LaCroix, a Haitian national, was "a removable alien." As such, the form requested that Department maintain custody of LaCroix for an additional period not to exceed forty-eight hours after the time he would otherwise be released from jail in order to allow DHS to take custody of him.

On March 1, 2017, LaCroix was transferred into federal custody pursuant to the federal immigration detainer. LaCroix remained in the county jail pursuant to this detainer request. At some point, LaCroix was deported from the United States.[2]

B. The habeas corpus proceedings below

On February 28, 2017, LaCroix filed in the trial court an "Emergency Petition for Writ of Habeas Corpus." LaCroix's petition simply stated that Department had failed to release LaCroix from jail after the expiration of his sentence. Immediately

---

[2] The record is not clear as to precisely when LaCroix was transported from the county jail and deported.

3

after receiving LaCroix's petition, the trial court ordered Department to file a response by March 2, 2017. Department met this filing deadline and, on March 2, 2017, the trial court conducted a hearing on LaCroix's petition. Although LaCroix was no longer in Department's custody, the trial court nonetheless entered the instant writ of habeas corpus on March 3, 2017. Department timely appeals

C. Miami-Dade County's policy toward immigration detainer requests

LaCroix's habeas corpus proceedings unfolded against the background of Miami-Dade County's efforts to adjust to evolving federal immigration policy. In 2013, the Miami-Dade County Commission passed Resolution No. R-1008-13, which directed the County Mayor to implement a policy whereby Department would not honor a federal immigration detainer request unless: (i) the federal government agreed to reimburse Miami-Dade County for all expenses related to the detainer request, and (ii) the inmate had either a conviction for a forcible felony or a pending charge of a non-bondable offense. Because the federal government and Miami-Dade County never came to agreement over the terms of this 2013 Resolution, Miami-Dade County ended its cooperation on federal immigration detainer requests. On January 25, 2017, President Trump issued an Executive Order that, in part, would terminate certain federal grant funding to local government "sanctuary jurisdictions." Even though Miami-Dade County had not declared itself a "sanctuary" county, given the discord with the federal government over County

4

Resolution No. R-1008-13, the County Mayor directed Department to begin honoring federal immigration detainer requests again.

The Miami-Dade County Commission convened in special session on February 17, 2017, to consider to what extent Miami-Dade County should cooperate with the DHS on federal immigration detainer requests in light of the federal government's apparent threat to restrict grant funding to Miami-Dade County. At this meeting, the County Commission adopted two Resolutions: (i) to return to Miami-Dade County's pre-2013 policy of cooperation on immigration detainer requests so long as the federal government showed probable cause for the detainer (Resolution No. R-163-17); and (ii) to authorize an appropriate legal challenge in the event the federal government denied grant funding due to Miami-Dade County's policy on federal immigration detainer requests (Resolution No. R-164-17).[3]

D. The Tenth Amendment basis for the trial court's grant of the writ

In adjudicating LaCroix's habeas corpus petition, the trial court applied a Tenth Amendment analysis to Department's continued incarceration of LaCroix.[4]

---

[3] As Department's initial brief points out, the meaning and implications of the January 25, 2017 Executive Order; the federal government's immigration detainer policies; federal grant guidelines as they relate to local government compliance with federal immigration law; and the status of Miami-Dade County's own compliance with the relevant federal law, 8 U.S.C. § 1373, all continued to evolve in the months after the trial court granted the writ of habeas corpus to LaCroix. Our focus, though, is on the trial court's action of March 2-3, 2017.

The trial court found that because the federal government has exclusive dominion over immigration and deportation, Department cannot be "commandeered" to perform the federal function of detaining prisoners for deportation purposes. In other words, DHS could not "conscript" Department officers and facilities to continue LaCroix's custody after his state sentence expired. The trial court also found that President Trump's Executive Order coerced Department compliance based on the threat of lost grant funding to Miami-Dade County if Department declined to cooperate with federal immigration detainer requests. Finally, the trial court found that LaCroix had standing to seek habeas corpus relief based on a Tenth Amendment violation.

## II. Analysis[5]

We quash the subject writ on the authority of <u>Ricketts v. Palm Beach County Sheriff</u>, 985 So. 2d 591 (Fla. 4th DCA 2008), which held that a State trial court lacks jurisdiction to adjudicate the validity of a federal immigration detainer.

In the <u>Ricketts</u> case, the Palm Beach County Sheriff arrested Ricketts for a third degree felony and held him in the county jail. After Ricketts attempted to post

---

[4] The Tenth Amendment to the United States Constitution provides: "The powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people."

[5] Our standard of review for a writ of habeas corpus is *de novo*. <u>State v. S.M.</u>, 131 So. 3d 780, 784 (Fla. 2013).

bond, the Sheriff refused to accept the bond because the Sheriff had received a federal immigration detainer request. Ricketts sought habeas corpus relief from the circuit court, asserting that he was illegally detained without judicial oversight or a showing of probable cause. Id. at 592. The trial court denied Ricketts's petition for writ of habeas corpus and the Fourth District affirmed. Id. at 592-93. The Fourth District, citing Plyler v. Doe, 457 U.S. 202 (1982), stated: "[A] state court cannot adjudicate the validity of the federal detainer, as the area of immigration and naturalization is within the exclusive jurisdiction of the federal government." Id. at 593.

The Court in Ricketts recognized that, once a person in custody becomes subject to a valid federal immigration detainer, he or she no longer is held in the custody of the state. Id. On the date of his petition for habeas corpus relief, LaCroix's physical location was a county jail cell, but his custodial status was established under federal authority. The federal courts have exclusive jurisdiction over a person in custody pursuant to valid federal authority. Ableman v. Booth, 62 U.S. 506, 523-24 (1858).

LaCroix seeks to distinguish Ricketts by arguing that Ricketts challenged his detention on due process grounds rather than on a Tenth Amendment basis. We note, parenthetically, that LaCroix did not raise the Tenth Amendment in his petition either, though the trial court based its grant of the writ on a Tenth Amendment

7

rationale. In any event, LaCroix's effort to distinguish <u>Ricketts</u> is immaterial in light of the overriding jurisdictional issue in this case. Simply put, irrespective of whether the challenge to the federal immigration detainer is based on an alleged due process violation or a Tenth Amendment violation, a state court cannot adjudicate the validity of a federal immigration detainer.[6]

Reversed; writ of habeas corpus quashed.

Fernandez, J., concurs.

---

[6] Because we conclude that the trial court lacked jurisdiction to adjudicate the validity of the federal immigration detainer, we need not, and therefore do not, reach the issue of whether LaCroix has standing to assert a Tenth Amendment "commandeering" challenge.

Rothenberg, C.J., specially concurring.

Although I completely agree with the excellent analysis performed and the conclusion reached in the majority opinion, I write to address the highly unusual and troubling procedural evolution of this case.

After posting a bond and obtaining a release from custody following a felony arrest, the defendant, James E. LaCroix ("LaCroix"), was arrested on January 28, 2017 and charged with having committed another felony. Based upon the new felony arrest while out on bond, LaCroix's bond was revoked and he remained in custody. On the following day, January 29, 2017, the Department of Homeland Security ("DHS") submitted a Request for Voluntary Transfer form ("DHS Form I-247X," "voluntary immigrations detainer request," or "federal detainer") to Miami-Dade County ("the County"). The voluntary immigration detainer request states that LaCroix had been deemed an immigration enforcement priority by DHS because "in the judgment of a designated senior DHS official, his [] removal would serve an important federal interest." The voluntary immigration detainer request further provides that: there was a finding of probable cause that LaCroix is a removable alien; his identity had been confirmed; a final order of removal had been issued; and requests that the County detain LaCroix for a period of time not to exceed forty-

9

eight hours beyond the time LaCroix would otherwise be released to allow DHS to assume custody of LaCroix.

LaCroix remained in custody from January 28, 2017 to February 28, 2017. On February 28, 2017, LaCroix appeared before Judge Milton Hirsch. During LaCroix's appearance, Judge Hirsch accepted LaCroix's guilty pleas to both felony cases, adjudicated LaCroix guilty, and sentenced LaCroix to credit for time served.

At the hearing, and after LaCroix's plea, LaCroix's counsel informed Judge Hirsch that, due to a federal detainer, LaCroix would not be released and thus he **intended to file** an emergency motion for LaCroix's release. Judge Hirsch advised LaCroix's to file a petition for writ of habeas corpus rather than a motion for LaCroix's release, and although **no motion or petition had yet been filed**, Judge Hirsch stated that he would enter an order directing Daniel Junior, the Director of the Department of Corrections ("the Department"), to respond within two days. Immediately thereafter, and while still at the hearing, Judge Hirsch produced and issued a previously prepared order with copies for distribution. In this order, Judge Hirsch made findings regarding mootness; made claims as to what LaCroix would allege even though no motion or petition had been filed, no allegations had yet been made, and no defenses had yet been raised; ordered Daniel Junior to respond in writing on or before noon on March 2, 2017 if he intended to oppose the petition; and set a hearing for March 2, 2017 at 1:00 p.m.

10

Judge Hirsch's order specifically states that LaCroix alleges "that he is charged with no Florida crime and serving no county sentence." The order then finds, "If that is so, the county has neither the authority nor, presumably, the desire to continue to hold him in its custody." Lastly, the order claims that LaCroix is (will be) alleging "that in continuing to hold him, the county acts as an agent for ICE, a federal entity."

As directed by the trial court, LaCroix's counsel filed an emergency petition for writ of habeas corpus, not an emergency motion for release. The unsworn petition challenged the legality of LaCroix's continued detention beyond the expiration of his sentence. The petition, however, made no claim that the County was acting as an "agent for ICE," as the trial court's order contended it would allege.

On the next morning, March 1, 2017, and within twenty-four hours of LaCroix's plea, LaCroix was released by the County and transferred into the custody of federal immigration officials. On March 2, 2017, as directed by the trial court, the County filed a response to the petition. In its response, the County attached a copy of DHS Form I-247X (the voluntary immigration detainer request), which stated that a finding of probable cause had been made by immigration officials, LaCroix's identity had been confirmed, an order for LaCroix's removal had been issued, and LaCroix's detention was at the request of the federal detainer form. The County additionally informed the trial court that LaCroix had already been

11

transferred into federal immigration custody and put the trial court on notice that an appellate court decision, which was binding authority on the trial court, had already determined that the state court lacks jurisdiction to determine the issue raised in the petition: the validity/legality of the federal detainer. Specifically, the County cited to Ricketts v. Palm Beach County Sheriff, 985 So. 2d 591 (Fla. 4th DCA 2008), which held that: (1) Ricketts could not "secure habeas corpus relief from the state court on the legality of his federal detainer" because "[t]he constitutionality of his detention pursuant to both the I-247 and I-203 federal forms is a question of law for the federal courts," id. at 592-93; and (2) "a state court cannot adjudicate the validity of the federal detainer, as the area of immigration and naturalization is within the exclusive jurisdiction of the federal government." Id. (citing Plyler v. Doe, 457 U.S. 202, 225 (1982); DeCanas v. Bica, 424 U.S. 351, 354 (1976)).

In its response, the County noted that, although the Third District had not yet spoken on the issue, the Fourth District had in Ricketts; Ricketts was "an on-all-fours decision that dismissed a virtually identical petition"; and the trial court was required to render a similar dismissal, even if the trial court disagreed with that outcome.

After receiving the County's response, with the attached copy of the federal detainer form, the trial court conducted the scheduled hearing on March 2, 2017. At the hearing, which was very brief, as reflected by the thirteen pages of transcript,

12

LaCroix's counsel argued that LaCroix was being unlawfully detained by the County because he had completed his sentence and because his detention was based upon nothing more than a request by the federal government without probable cause. However, as the County had already provided proof that LaCroix was no longer being detained by the County and that his detention for twenty-four hours was based not only on probable cause, but on confirmation of his identity and a final order of removal, this argument was without merit.

LaCroix's counsel also raised, for the first time at the hearing, that the Tenth Amendment barred the County's voluntary cooperation with ICE on immigration detainers. In response, the County reiterated the arguments made in its written response and additionally informed the trial court that the final order of removal referenced in the detainer request means that LaCroix had already gone through the adjudicative process, his claim had been heard, and a final order was issued stating that LaCroix shall be removed from the United States.

The County additionally argued that, although there are procedural safeguards which protect individuals from being held indefinitely, federal law authorizes the federal government and state and local agencies and detention facilities to cooperate with each other. If an individual wishes to attack the legality or constitutionality of a federal detainer request, he or she must do so in federal court, with notice to the federal government and by providing the federal government with an opportunity to

defend against the claims. That was not done in this case. The petition made no constitutional challenge; the petition was filed in state court, which has no authority to adjudicate such claims; and no notice was given to the federal government. Lastly, the County argued that <u>Ricketts</u> controls and that LaCroix had cited to no case that had concluded contrary to the Fourth District's decision in <u>Ricketts</u>. Thus, the County argued that the petition should be dismissed for lack of jurisdiction.

Following the hearing, the trial court issued its order granting the petition. The order, which is longer that the hearing transcript, relies on "facts" wholly outside the record with no evidence to support them, makes findings on arguments not raised in the petition or at the hearing, and in many instances, it is factually incorrect. In fact, the order states that much of its findings are based on the trial court's independent investigation and review of Miami Herald newspaper articles.

The order begins with its research regarding the size of the County's correctional system and the number of incarcerated individuals. It then discusses historical data the trial court pulled from Miami Herald newspaper articles that discussed the number of detainer requests issued in 2012, and the vote by the Miami-Dade County Commission in 2013 to no longer honor such requests. Next, the order cites to a Miami Herald newspaper article that referenced an executive order signed by President Donald Trump, which the article claimed threatened to cut federal grants to counties and cities that do not cooperate fully with Immigration and

Customs enforcement and forced the County Mayor to immediately reverse the County's policy and to order county jails to comply with these detention requests. The trial court then found that the County's correctional facilities and personnel "have been conscripted to lock him [LaCroix] up for and on behalf of the federal government and to do so at the county's expense."

The trial court's order builds on its unsubstantiated theme of coercion by claiming, again without evidentiary support and even in the absence of such a claim by LaCroix, that the Department's detention of LaCroix was achieved by "financial starvation," rendering the Department "the cat's paw of ICE." In addition to these unsubstantiated claims, the order contends that LaCroix had argued that the Department's detention of him was in violation of the "anti-commandeering principle of the Tenth Amendment."

The order then makes findings that are contrary to the unrefuted evidence submitted at the hearing. For example, the order finds that the detainer request was founded on **mere belief** by ICE that it had a basis to "inquire further as to LaCroix's status." The detainer request was submitted with the County's written response to the trial court's directive and contrary to the trial court's order, it unequivocally states that a finding of probable cause for removal had been made and a final order of removal has been issued. Additionally, at the hearing, counsel for the County reiterated that a finding of probable cause for removal had been made, LaCroix had

been given a hearing before an immigration judge, and thereafter the immigration judge issued a final order for LaCroix's removal from the United States. Upon the issuance of that order, federal authorities had the right to seize LaCroix. The County's cooperation simply provided ICE with the option of picking LaCroix up from the county jail within forty-eight hours of his plea, rather than seizing him as he left the courtroom. Thus, the trial court's order is factually incorrect.

Lastly, I feel compelled to address the trial court's failure to follow binding precedent, as this is not the first time this trial judge has failed to do so. See State v. Washington, 114 So. 3d 182 (Fla. 3d DCA 2012). Just as in Washington, the trial court failed to follow binding state precedent, and instead, relied on non-state, non-binding opinions to support its position. In Washington, this Court reminded the same trial judge that "[t]he decision[s] of the district courts of appeal represent the law of Florida unless and until they are overruled by [the Florida Supreme] Court." Washington, 114 So. 3d at 185 (quoting Stanfill v. State, 383 So. 2d 141, 143 (Fla. 1980)). "Thus, in the absence of interdistrict conflict, district court decisions bind all Florida trial courts." Washington, 114 So. 3d at 185 (quoting Pardo v. State, 596 So. 2d 665, 666 (Fla. 1992)).

In Ricketts, the Fourth District unequivocally held that "a state court cannot adjudicate the validity of the federal detainer, as the area of immigration and naturalization is within the exclusive jurisdiction of the federal government."

16

Ricketts, 985 So. 2d at 593 (citing Plyler v. Doe, 457 U.S. 202, 225 (1982)). "The constitutionality of his detention pursuant to both the I-247 and I-203 federal forms is a question of law for the federal courts." Id. at 592-93. As the opinion explains:

> Once appellant posts bond on his state charges or his state sentence expires, he will be "released" from state custody and then booked on the federal immigration detainer. At that point, the sheriff will not be holding appellant pursuant to state authority but pursuant to federal authority, and the legality of the detainer and the process by which he is held will be a question for the federal courts.

Id. at 593 (footnote omitted).

Just as in Ricketts, LaCroix completed his state sentence, he was booked on a federal immigration detainer, and he was being held pursuant to federal authority when the petition for writ of habeas corpus was filed. And, in this case, LaCroix was released to federal custody prior to the hearing. Thus, LaCroix's attacks upon the legality and/or constitutionality of his temporary detention by the County pursuant to the federal detainer was not properly raised in the state circuit court and should have been dismissed for lack of jurisdiction.

The trial court's findings of coercion are also not supported by the record. The trial court's order claims that the County was coerced into cooperating with the federal government. However, the County, which was ordered to respond to the petition, made no such claim and the record on appeal demonstrates the opposite.

In response to concerns by the County Mayor and the County Commissioners regarding the potential loss of certain federal funds if declared a "sanctuary

17

jurisdiction," the County Commission called for a special meeting to be held on February 17, 2017 to discuss the County's policy regarding federal immigration detainer requests. Prior to the meeting, a legal opinion was requested and received from the County Attorney's Office. In its opinion, the County Attorney advised, among other things, that the Tenth Amendment of the United States Constitution protected the County from being compelled to enforce a federal regulatory program, and any cooperation between the County and the federal government with respect to immigration enforcement "must, as a matter of law, be voluntary." The opinion also advised that the County had not been designated a sanctuary jurisdiction, the current definition of sanctuary jurisdictions did not include the County, and the vast majority of the County's federal funding was not at risk whether or not the County decided to revise its federal detainer policy.

At the Commission meeting on February 17, 2017, the County Commission considered six separate resolutions offering differing levels of cooperation with the federal government regarding immigration detainer requests. After its discussion, the County Commission voted to return to its pre-2013 policy and honor federal detainer requests, provided a finding of probable cause for removal had been made. Further, the County states in its answer brief before this Court that, "To date, no grants issued by the Department of Justice and Homeland Security—nor any other

federal department—have been conditioned on voluntary compliance with ICE immigration detainers."

Although the Tenth Amendment protects states and local governments from being "commandeered" or compelled to enact and enforce a federal regulatory program, it does not foreclose the federal government from "encourag[ing] a State [or local government] to regulate in a particular way, or . . . hold out incentives to the States as a method of influencing a State's policy choices." New York v. United States, 505 U.S. 144, 161, 166 (1992); see also South Dakota v. Dole, 483 U.S. 203, 203, 206 (1987) (holding that the federal government "may attach conditions on the receipt of federal funds, and has repeatedly employed the power to further broad policy objectives by conditioning receipt of federal moneys upon compliance by the recipient with federal statutory and administrative directives").

Notably, the County, itself, has not alleged coercion, and if the County wished to make such a claim, its challenge would be in federal court.

## Conclusion

In my opinion, the trial court impermissibly crossed the line between neutral arbiter of the facts to that of an advocate, preparing and issuing an order before the filing of any motion or petition by LaCroix based on arguments not made by LaCroix. The trial court's order granting LaCroix's petition also misstated the record evidence, improperly relied on non-record "evidence" culled from non-

19

authoritative newspaper articles and failed to apply binding precedent.  Thus, for the reasons articulated in the majority opinion and in this specially concurring opinion, I agree that reversal of the trial court's order is mandated.