DAVIS, Judge.
Six juveniles filed a consolidated petition for writ of habeas corpus seeking release from home detention pending an adjudicatory hearing. Because we agreed that ha-beas corpus relief was not appropriate, we previously denied the writ. We now write to explain our decision.
In each instance, the juvenile was on probation or conditional release, which he or she allegedly violated by failing to be at home according to the terms of his or her curfew.[1] Subsequently, the juveniles were *1258 individually taken into custody on separate pick-up orders between June 2 and 4, 2012. The Department of Juvenile Justice (DJJ) prepared Risk Assessment Instruments (RAIs) at initial intakes prior to the detention hearings and determined that each child should be placed in home detention despite scoring a total of zero points on his or her RAI. At the detention hearings, the trial court, determining that continued detainment was appropriate, placed each juvenile on home detention with electronic monitoring for twenty-one days pending an adjudicatory hearing.
The petitioners filed emergency petitions for writ of habeas corpus, arguing that they were being illegally detained because a score of six or fewer points on the RAI mandates release. See generally T.K.B. v. Durham, 63 So.3d 60, 62 (Fla. 1st DCA 2011) (“According to the criteria set by the RAI, a child who has a score of twelve or more points qualifies for secure detention, a child who has a score of seven to eleven points qualifies for home detention, and a child who scores below seven points does not qualify for any form of detention.”). Quoting S.M. v. State, Department of Juvenile Justice, 91 So.3d 175, 175 (Fla. 4th DCA 2012), the petitioners argue “that section 985.255(l)(h), Florida Statutes [ (2012) ], does not permit home detention without a qualifying risk assessment score.”
Like the petitioners here, the juvenile petitioner in S.M. was alleged to have violated probation, received a score of zero points on the RAI, and was placed in home detention. The petitioner filed a habeas petition “contending that the court could not place her in home detention without a qualifying RAI score.” Id. Agreeing with the petitioner’s argument, the Fourth District granted the petition and concluded that the trial court erred in placing the juvenile in home detention because she scored zero points on the RAI. Id. at 176. The court reasoned as follows:
Section 985.255(l)(h) does not require mandatory home detention with electronic monitoring for all juveniles charged with violating probation. This section permits a court to continue detention required by the juvenile probation officer during intake. § 985.255(1), Fla. Stat. (2011) (“Subject to s. 985.25(1), a child taken into custody and placed into nonsecure or home detention care or detained in secure detention care pri- or to a detention hearing may continue to be detained by the court if ...”). During intake, the juvenile probation officer may not require detention unless authorized by the RAI. § 985.25(l)(b), Fla. Stat. (2011). Thus, section 985.255(l)(h) presupposes the existence of a qualifying RAI score before a court may continue detention.
Id. (emphasis added).
In our view, the analysis in S.M. is incomplete. We agree that section 985.255(1) permits the court to continue detention as established by the probation officer and that at intake the probation officer can require detention only if it is authorized by the RAI. The risk assessment instrument as a whole provides the probation officer with the criteria to be considered in determining the need for detention care. See T.K.B., 63 So.3d at 62 (“If a juvenile qualifies for detention under the ‘admission criteria’ of the RAI and subsections 985.255(l)(a) through (j) .... a child ... who scores below seven points does not qualify for any form of deten *1259 tion.”); see also § 985.245(2)(a) (giving DJJ the policy-making authority to create the RAI). But the RAI also allows for certain exceptions under which the juvenile may be detained regardless of the total risk assessment score, which is only one aspect of the instrument.[2] Thus, section 985.255(1) presupposes the existence of a qualifying risk assessment instrument, not just a qualifying score, before a court may continue detention. See § 985.25(l)(b) (stating that the juvenile probation officer shall determine the need for detention care based on “an assessment of risk in accordance with the risk assessment instrument and procedures developed by the department under s. 985.245” (emphasis added)).
Under the “Admission Criteria” section of the RAI, any juvenile who meets one of the requirements in subsections (F) through (K) is subject to detention regardless of the number of points scored on the RAI. See also § 985.255(l)(a)-(j). But see T.K.B., 68 So.3d at 62 (suggesting that the juvenile must qualify for secure detention by the scoring of points in factors (A) through (K) of the RAI, whereas the face of the RAI indicates that the points are scored using factors (A) through (E) or that detention may be reached by any designation under factors (F) through (K), regardless of the number of points scored). The relevant exception in this case is subsection (J) “a youth ... alleged to have violated the conditions of the youth’s probation or conditional release supervision.” See also § 985.255(l)(h).
Because the juveniles here were alleged to have violated the conditions of their probation or conditional release supervision, the probation officers properly concluded that home detention was appropriate under subsection II.J of the RAI in spite of a risk assessment score of zero points. At the detention hearings, the juvenile court judge properly continued their detentions under section 985.255(l)(h), which provides for continuing the child’s placement in home detention care if the child is alleged to have violated probation or conditional release. Because it was within the court’s discretion to determine that continued home detention was necessary in these circumstances, habeas relief was not warranted and we denied the petition. To the extent that our opinion conflicts with S.M. and T.K.B., we certify conflict.
Petition denied; conflict certified.
VILLANTI and CRENSHAW, JJ., Concur.

. J.L.T. was placed on conditional release in December 2011 for burglary of an unoccupied dwelling. D.S. was placed on probation in April 2011 for trespass and petit theft. I.J.A. was placed on conditional release in September 2011 for trespass, petit theft, and criminal mischief. D.T.D. was placed on probation in May 2012 for burglary. O.H. was placed on probation in December 2011 for burglary. J.R. was placed on conditional release for *1258 resisting a law enforcement officer without violence and public order crimes in September 2011.

. The RAI is composed of six separate sections: section I. Identifying Data; section II. Admission Criteria; section III. Risk Assessment; section IV. State Attorney Review/Decision; section V. Screening Decision; and section VI. Narrative.