CANADY, J.
In this case, we consider the provisions of Florida law governing the detention of juveniles prior to adjudicatory hearings. Specifically, we address whether a district court of appeal may grant a juvenile’s petition for a writ of habeas corpus seeking release from pre-adjudicatory hearing detention without reviewing the juvenile’s risk assessment instrument (RAI) and whether a juvenile with a risk assessment score of zero may be placed in home detention when it is alleged that the juvenile has violated probation.
We have for review the decision of the Fourth District Court of Appeal in S.M. v. State, 91 So.3d 175 (Fla. 4th DCA 2012), which granted S.M.’s petition for a writ of habeas corpus. Despite not being provided with a copy of S.M.’s RAI, the Fourth District reasoned that “[bjecause S.M.’s RAI score was zero, the [trial] court erred in placing her in home detention.” Id. at 176. The Fourth District’s decision expressly and directly conflicts with R.J.L. v. State, 22 So.3d 130 (Fla. 5th DCA 2009), B.L.G. v. State, 928 So.2d 461 (Fla. 5th DCA 2006), and T.D.S. v. State, 922 So.2d 346 (Fla. 5th DCA 2006), in which the Fifth District Court of Appeal concluded that a juvenile may be placed in home detention with a risk assessment score of zero. We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.
*782 Because the RAI is necessary to establish entitlement to relief, we conclude that a district court may not grant a juvenile’s pre-adjudicatory petition for a writ of ha-beas corpus when the court is not presented with the juvenile’s RAI. We further conclude that a juvenile may be placed in home detention with a risk assessment score of zero when the juvenile qualifies for home detention under the specific terms of the form RAI, as did S.M. due to her status as an alleged probation violator. Accordingly, we quash the decision of the Fourth District.
I. BACKGROUND
On May 11, 2012, S.M. was arrested at school after allegedly punching another minor female. S.M. was on probation at the time of her arrest. S.M. was initially charged with aggravated battery on a victim who S.M. knew or should have known was pregnant under section 784.045(l)(b), Florida Statutes (2011).
On May 14, 2012, the trial court held a detention hearing at which S.M. challenged whether the State had probable cause to charge S.M. with aggravated battery on a victim who S.M. knew or should have known was pregnant. The trial court gave the State twenty-four hours to establish probable cause for the aggravated battery charge. On May 15, 2012, the trial court resumed the detention hearing. During the May 15 portion of the hearing, S.M. and the State disputed S.M.’s score on section III of the RAI. Eventually, they stipulated that S.M.’s risk assessment score should be zero. However, they disagreed about whether S.M. could be placed in home detention — instead of being released — with a score of zero. The trial court placed S.M. in home detention with electronic monitoring.
On May 17, 2012, S.M. filed with the Fourth District a petition for a writ of habeas corpus, in which she challenged the trial court’s home detention order. S.M. argued that because her risk assessment score was zero, the trial court could not place her in home detention. S.M., 91 So.3d at 175. S.M. did not submit a copy of her RAI with her habeas petition. Instead, the appendices to S.M.’s habeas petition included a copy of the trial court’s detention order, the trial court’s provisional order appointing the public defender, and transcripts from S.M.’s detention hearings on May 14 and 15, 2012. The State argued that the petitioner was required to submit the RAI in order for the district court to properly consider the petition. The Fourth District disagreed. A copy of S.M.’s RAI subsequently became a part of the record before the Fourth District when the State attached the RAI to its motion for rehearing.
The Fourth District relied on section 985.255(3)(a), Florida Statutes (2011), for the proposition that except for situations involving subsection (l)(d) — relating to domestic violence — or (l)(e) — relating to possessing or discharging a firearm on school property — of the statute, the determination of whether or not continued detention of a juvenile is necessary is based on the juvenile’s RAI score. S.M., 91 So.3d at 175-76. It explained that section 985.255(l)(h), Florida Statutes (2011), which addresses juveniles who are charged with violating probation, does not require that the trial court impose home detention. S.M., 91 So.3d at 176. As a result, the Fourth District concluded that “[bjecause S.M.’s RAI score was zero, the court erred in placing her in home detention.” Id.
The State and the Department of Juvenile Justice (hereinafter referred to collectively as “the State”) petitioned this Court for review, alleging express and direct conflict with R.J.L., B.L.G., and T.D.S. In R.J.L., B.L.G., and T.D.S., the trial judge *783 placed the juvenile in secure detention for violating probation even though the juvenile’s risk assessment score was zero. R.J.L., 22 So.3d at 131; B.L.G., 928 So.2d at 461; T.D.S., 922 So.2d at 347. In each case, the Fifth District held that the juvenile must be released from secure detention and instead placed in home detention. R.J.L., 22 So.3d at 131; B.L.G., 928 So.2d at 461; T.D.S., 922 So.2d at 347. This Court granted review.
On January 9, 2013, the Second District issued J.L.T. v. Department of Juvenile Justice, 104 So.3d 1257 (Fla. 2d DCA 2013), in which it certified conflict with the Fourth District’s decision in the instant case and the First District’s decision in T.K.B. v. Durham, 63 So.3d 60 (Fla. 1st DCA 2011), on the issue of whether a juvenile may be placed in home detention with a risk assessment score of zero. In J.L.T., six juveniles were place in home detention for violating the terms of their probation or conditional release (three violated probation and three violated conditional release) even though they had risk assessment scores of zero. J.L.T., 104 So.3d at 1258-59. In that case, the Second District concluded:
Because the juveniles here were alleged to have violated the conditions of their probation or conditional release supervision, the probation officers properly concluded that home detention was appropriate under subsection II.J of the RAI in spite of a risk assessment score of zero points. At the detention hearings, the juvenile court judge properly continued their detentions under section 985.255(l)(h), which provides for continuing the child’s placement in home detention care if the child is alleged to have violated probation or conditional release. Because it was within the court’s discretion to determine that continued home detention was necessary in these circumstances, habeas relief was not warranted and we denied the petition.
Id. at 1259. The Second District explained that the Fourth District’s analysis in S.M. was “incomplete” because
the RAI also allows for certain exceptions under which the juvenile may be detained regardless of the total risk assessment score, which is only one aspect of the instrument. Thus, section 985.255(1) presupposes the existence of a qualifying risk assessment instrument, not just a qualifying score, before a court may continue detention.
Id. (footnote omitted).
Even though S.M.’s case appears to be moot because her adjudicatory hearing presumably occurred in 2012, this issue will recur, yet evade review because of the short period of time that a juvenile will be detained prior to an adjudicatory hearing. See N.W. v. State, 767 So.2d 446, 447 n. 2 (Fla.2000) (concluding that the Court had jurisdiction to consider on the merits a moot case involving periods of juvenile supervision and community control because the situation was capable of repetition but would evade review). In the analysis that follows, we first examine the governing statutory provisions and determine that the Fourth District erred in granting S.M.’s petition for a writ of habeas corpus without reviewing S.M.’s RAI. We then resolve the conflict issue by concluding that a juvenile may be placed in home detention with a risk assessment score of zero when authorized by the terms of the RAI.
II. ANALYSIS
A. Failure to Submit the RAI to the Fourth District
As a preliminary matter, this Court must determine whether a district court of *784 appeal may consider a juvenile’s petition for a writ of habeas corpus when the petitioner fails to provide a copy of the RAI to the district court. Whether or not S.M. provided the Fourth District with an adequate record for the court to review, her habeas petition is “a pure question of law and is subject to the de novo standard of review.” State v. Blair, 39 So.3d 1190, 1191-92 (Fla.2010).
A petition for a writ of habeas corpus must be denied when the petitioner fails to provide the district court with an adequate record to review the petition. See, e.g., G.L. v. State, 917 So.2d 342, 342-43 (Fla. 5th DCA 2005) (denying habeas petition due to “woefully inadequate” record provided by petitioner); King v. Byrd, 590 So.2d 2, 3 (Fla. 1st DCA 1991) (denying habeas petition due to petitioner providing inadequate record that would have required the court to “accept petitioner’s version of the events as true”). In Applegate v. Barnett Bank of Tallahassee, 377 So.2d 1150, 1152 (Fla.1979), this Court explained:
When there are issues of fact the appellant necessarily asks the reviewing court to draw conclusions about the evidence. Without a record of the trial proceedings, the appellate court cannot properly resolve the underlying factual issues so as to conclude that the trial court’s judgment is not supported by the evidence or by an alternative theory. Without knowing the factual context, neither can an appellate court reasonably conclude that the trial judge so misconceived the law as to require reversal. The trial court should have been affirmed because the record brought forward by the appellant is inadequate to demonstrate reversible error.
Id. The reasoning in Applegate has been applied to petitions for writs of habeas corpus brought by juveniles. For example, in G.L., the Fifth District stated that “the burden of bringing forth an adequate record is placed upon the petitioner” because “we cannot simply presume that error exists.” G.L., 917 So.2d at 343. The Fifth District denied G.L.’s habeas petition without prejudice in order to provide G.L.’s counsel the opportunity to refile the petition with an adequate record. Id. (footnote omitted).
In Florida, juvenile detention is governed by chapter 985, Florida Statutes. See B.M. v. Dobuler, 979 So.2d 308, 310 (Fla. 3d DCA 2008). Section 985.245(1), Florida Statutes (2011), states that “[a]ll determinations and court orders regarding placement of a child into detention care shall comply with all requirements and criteria provided in this part and shall be based on a risk assessment of the child, unless the child is placed into detention care as provided in s. 985.255(2).” Section 985.255(2), Florida Statutes (2011), addresses situations where a juvenile “is charged with committing an offense of domestic violence.” Section 985.245(2), Florida Statutes (2011), directs the Department of Juvenile Justice to develop the RAI and specifies certain factors that the RAI should take into consideration. Section 985.255(1), Florida Statutes (2011), contains subparagraphs (a) through (j), which list situations when a juvenile may remain detained following a detention hearing but prior to an adjudicatory hearing. The situations where a juvenile may be detained listed in section 985.255(1) overlap with the situations in which a juvenile may be detained listed in the form RAI. Section 985.255(3)(a), Florida Statutes (2011), states that except for situations where the child is charged with a domestic violence offense or an offense involving possession or discharge of a firearm on school property, “the court shall use the results of the risk assessment per *785 formed by the juvenile probation officer and, based on the criteria in subsection (1), shall determine the need for continued detention.”
A copy of S.M.’s RAI was essential for the review of S.M.’s habeas petition. Section 985.255(3)(a) is clear that in most cases, a trial court’s decision regarding juvenile detention must be based on the RAI.
By reviewing S.M.’s habeas petition on the merits without a copy of her RAI, the Fourth District accepted S.M.’s assertion that the RAI was irrelevant because the parties stipulated that S.M.’s RAI score was zero without verifying that the RAI contained no other information that was relevant to its review. Because S.M. provided the court with an inadequate record for review of her claim, the Fourth District erred in granting S.M.’s petition for a writ of habeas corpus. As the State argued, the Fourth District should have denied S.M.’s habeas petition without prejudice so that S.M.’s counsel could refile her habeas petition with a copy of the RAI. See G.L., 917 So.2d at 343; King, 590 So.2d at 3.
B. Home Detention of a Juvenile With a Risk Assessment Score of Zero
Whether a juvenile may be placed in home detention even though her risk assessment score is zero presents a pure question of law that is subject to de novo review. Insko v. State, 969 So.2d 992, 998 (Fla.2007). “Judicial interpretations of statutes are pure questions of law subject to de novo review.” Johnson v. State, 78 So.3d 1305, 1310 (Fla.2012) (citing State v. Sigler, 967 So.2d 835, 841 (Fla.2007)). “The detention of juveniles in Florida is governed by chapter 985, Florida Statutes.” See B.M., 979 So.2d at 310.
Section III of the RAI provides for the calculation of a risk assessment score and sets forth a key for determining whether a juvenile should be released, placed on non-secure or home detention, or in secure detention. But in some cases section III never comes into play. Section II of the RAI, titled “Admission Criteria,” lists criteria (A) through (K). At the end of section II, the RAI contains a box that reads: “If any of the above (A-E) are answered yes, proceed to Section III, unless youth is charged solely with an act of misdemeanor domestic violence (D). If each of the above (A-E) are answered no the youth must be released, unless F through K is answered yes.” Therefore, section III does not come into play and a juvenile may be detained in circumstances outlined in criteria (F) through (K) regardless of the juvenile’s risk assessment score. Criteria (F) through (K) address the following circumstances in which a juvenile: (F) “is charged with an offense involving use or possession of a firearm;” (G) is “delivered with a judicial order requiring detention care;” (H) has been found to be in contempt of court; (I) has been found to be in contempt of court regarding traffic violations; (J) has violated terms of probation or conditional release; (K) has failed to appear for an adjudicatory hearing after previously willfully failing to appear in the same case.
S.M.’s RAI contains a “yes” response to criteria (J) in section II. The “yes” response at criteria (J) indicates that S.M. was “alleged to have violated the conditions of [her] probation or conditional release supervision.” The RAI indicates that S.M. should be placed in home detention instead of a consequence unit. Based on the “yes” response to criteria (J) in section II, S.M. could be placed in home detention or in a consequence unit, regardless of her RAI score. This element of the form RAI is in line with the provisions of *786 section 985.255(l)(h), Florida Statutes (2011), which specifically authorizes the continued detention of a juvenile where:
The child is alleged to have violated the conditions of the child’s probation or conditional release supervision. However, a child detained under this paragraph may be held only in a consequence unit as provided in s. 985.439. If a consequence unit is not available, the child shall be placed on home detention with electronic monitoring.
Therefore, the Fourth District erred when it concluded that S.M. could not be placed on home detention because her risk assessment score was zero. Conversely, the Second and Fifth District Courts of Appeal correctly concluded that a juvenile with a risk assessment score of zero may be placed in home detention when the juvenile has violated probation or conditional release. See J.L.T., 104 So.3d at 1259; R.J.L., 22 So.3d at 131; B.L.G., 928 So.2d at 461; T.D.S., 922 So.2d at 347.
III. CONCLUSION
Based on the foregoing, we quash the Fourth District’s decision granting S.M.’s habeas petition, disapprove the First District’s decision in T.K.B. to the extent that it is inconsistent with this opinion, and approve J.L.T., R.J.L., B.L.G., and T.D.S.
It is so ordered.
POLSTON, C.J., and PARIENTE, LEWIS, QUINCE, LABARGA, and PERRY, JJ., concur.