NOT FINAL UNTIL TIME EXPIRES TO FILE REHEARING
MOTION AND, IF FILED, DETERMINED

IN THE DISTRICT COURT OF APPEAL

OF FLORIDA

SECOND DISTRICT

G4S SECURE SOLUTIONS (USA), INC., a )
Florida Profit Corporation and ANDREW W. )
IZRAILOV a/k/a ANDREY W. IZRAILOV, )
)
      Appellants, )
)
v. )      Case No. 2D15-2336
)
SHARON MORROW, as Personal )
Representative of the Estate of THOMAS )
MORROW, deceased, )
)
      Appellee. )
_____)

Opinion filed September 2, 2016.

Appeal pursuant to Fla. R. App. P. 9.130
from the Circuit Court for Pinellas County;
Anthony Rondolino, Judge.

Edward R. Nicklaus of Nicklaus &
Associates, P.A., Coral Gables, for
Appellants.

Michael J. Babboni of Shapiro, Goldman,
Babboni & Walsh, St. Petersburg, and
Tracy Raffles Gunn of Gunn Appellate
Practice, P.A., Tampa, for Appellee.

SILBERMAN, Judge.

      Thomas Morrow died after being severely beaten by a fellow prisoner

while Andrew W. Izrailov was transporting the men to a Pinellas County Sheriff's Office

("PCSO") facility. Personal representative Sharon Morrow subsequently filed a wrongful death action against Izrailov and his employer, G4S Secure Solutions (USA), Inc. ("G4S"). G4S, which was handling prisoner transport pursuant to an agreement for services with PCSO, filed a motion for summary judgment based on limited sovereign immunity under section 768.28, Florida Statutes (2012). In this appeal, G4S and Izrailov seek review of the order denying the motion. We reverse because the undisputed evidence establishes that G4S and Izrailov were entitled to limited sovereign immunity as agents of PCSO.

Section 768.28(9)(a) provides for sovereign immunity from tort actions for any "officer, employee, or agent of the state or of any of its subdivisions." Section 768.28(5), however, provides for a limited waiver of this sovereign immunity. Plancher v. UCF Athletics Ass'n, 175 So. 3d 724, 726 (Fla. 2015). "The state and its agencies and subdivisions" retain the same liability for tort claims as private individuals, but liability does not include punitive damages or prejudgment interest. § 768.28(5). There is a recovery limit of $200,000 for claims by one person and $300,000 per incident or occurrence. Id. "[S]tate agencies or subdivisions" are defined to include "corporations primarily acting as instrumentalities or agencies of the state." § 768.28(2).

Thus, limited sovereign immunity is available for private parties involved in contractual relationships with the state if those parties are determined to be acting as agents of the state. Plancher, 175 So. 3d at 726; Stoll v. Noel, 694 So. 2d 701, 703 (Fla. 1997). The determinative factor is the degree of control retained or exercised by the state agency. Plancher, 175 So. 3d at 728; Stoll, 694 So. 2d at 703.

An express intent regarding agency status is to be considered in deciding the issue, but it is not dispositive. M.S. v. Nova Se. Univ., Inc., 881 So. 2d 614, 620 (Fla. 4th DCA 2004); Robinson v. Linzer, 758 So. 2d 1163, 1164 (Fla. 4th DCA 2000). If the provisions of the contract governing the state's right to control are inconsistent with the parties' expressed intent, the nature of the relationship controls over the label. Robinson, 758 So. 2d at 1164.

The agreement between G4S and PCSO contains language expressing an intent to avoid creating an agency relationship. The agreement states that G4S "is and shall remain an independent contractor and is neither agent, employee, partner, nor joint venturer of [PCSO]." The agreement claims to give G4S "sole" responsibility for "[h]iring, scheduling, directing, controlling and discharging" its employees. It also requires G4S to obtain liability insurance in an amount greater than the sovereign immunity caps. And it contains an indemnification and hold harmless provision.

However, the indemnification and hold harmless provision also contains language expressing an intent to avoid waiving sovereign immunity.[1] And other provisions and evidence establish that PCSO has a degree of control over G4S's operations that creates an agency relationship. PCSO exercises extensive control over the hiring and training of G4S employees. PCSO participates in the interviews of potential G4S hires and has the final say over who is hired. PCSO also has the ability to have a G4S employee fired at will. PCSO conducts the training of G4S employees, and the employees are trained according to PCSO procedures. In fact, G4S is required

---

[1]The provision states, "Nothing contained herein waives or shall be construed to waive the protections of sovereign immunity of any person or entity, consistent with Section 768, Florida Statutes."

- 3 -

to comply with all of PCSO's "standards, policies, training, and directives." G4S is also required to create and update standard operating procedures (SOPs) subject to PCSO approval.

PCSO also retains control over G4S's budget in relation to the agreement, including employee salaries and pricing schedule. PCSO has the final say over wage increases and billing rates, and G4S is subject to audits by PCSO. Additionally, G4S must obtain PCSO's prior written approval of any overtime requests and must submit monthly sign-in sheets and invoices to PCSO.

Finally, PCSO is highly involved in the day-to-day operations of G4S. G4S employees receive orders directly from PCSO's dispatch officer, and they are in constant contact. PCSO supplies and maintains the transport vehicles and equipment, and PCSO monitors the vehicles while they are in transit. G4S is required to report daily attendance records at all posts, and PCSO has the authority to change G4S employee schedules "as necessary." G4S must assign a contact person who is required to meet with PCSO's contract administrator "at a minimum of once each week/month as directed."

PCSO's degree of control over G4S under the agreement is analogous to that of the agency in Prison Rehabilitative Industries v. Betterson, 648 So. 2d 778 (Fla. 1st DCA 1994). In Betterson, the alleged agent was a corporation that had been organized for the purpose of running a prison work program and was governed by statute. Id. at 780. While the statute accorded the corporation a great deal of independence in the operation of the work program, it also contained provisions

- 4 -

providing the government extensive control over the corporation's day-to-day operations.

Those provisions included requiring government approval of the corporation's sale of goods to private entities, its articles of incorporation, and its policies and procedures. Additionally, the government administered the trust fund which funded the corporation. The corporation also had to provide the government with an annual financial statement and status report, and it was subject to financial and performance audits by the government. Finally, the corporation was restricted to nonprofit status, and the government retained a reversionary interest in any property that related to a correctional work program. Id. The First District concluded that the cumulative effect of these statutory provisions constituted sufficient control over the corporation to create an agency relationship. Id. at 780-81.

G4S's operations are subject to many of the same types of government control as the corporation's in Betterson, albeit pursuant to agreement rather than by statute. G4S is required to follow PCSO's policies and procedures, and G4S is required to obtain PCSO approval of its SOPs, hiring decisions, and overtime billing. G4S's budget for the agreement is controlled by PCSO, and G4S is subject to finance and performance audits by PCSO. PCSO also owns the vehicles and equipment used by G4S to perform its duties.

Contrary to the statement in the agreement, G4S does not have "sole" responsibility for "[h]iring, scheduling, directing, controlling and discharging" its employees. Instead, PCSO exercises a great deal of control over G4S's hiring and training of G4S employees, budget and employee salaries, and day-to-day operations.

- 5 -

Thus, while PCSO and G4S may have stated they were not creating an agency relationship, they nevertheless did so by virtue of PCSO retaining and exercising extensive control over G4S's operations.

We have considered the application of section 30.24(2)(b), Florida Statutes (2012), but it does not impact our analysis. Section 30.24 is entitled "Transportation and return of prisoners" and provides, in pertinent part:

> (2)(a) The sheriff of each county of the state is authorized to contract with private transport companies for the transportation of prisoners both within and beyond the limits of this state. Each prisoner shall be delivered to the transport company by a sheriff or other proper law enforcement official for transportation and then delivered by the same transport company to the proper sheriff or other law enforcement official upon arriving at the point of destination.
>
> (b) Any company transporting a prisoner pursuant to this section shall be considered an independent contractor and shall be solely liable for the prisoner while the prisoner is in the custody of the company. Any transport company contracting with a sheriff for the transportation of prisoners as provided for in this section shall be insured and shall provide no less than $100,000 in liability insurance with respect to the transporting of the prisoners.

(Emphasis added.)

Section 30.24 does not waive sovereign immunity or address sovereign immunity in any manner. While section 30.24(b) gives private transport companies independent contractor status, this status does not preclude such companies from being agents of the state for purposes of sovereign immunity. See Stoll, 694 So. 2d at 703. Independent contractor status and agency status are not mutually exclusive. Id. "One who contracts to act on behalf of another and subject to the other's control except with

respect to his physical conduct is an agent and also an independent contractor." Id. (quoting Restatement (Second) of Agency § 14N (Am. Law Inst. 1957)).

Likewise, section 30.24's requirements of holding the sheriff harmless and maintaining $100,000 in liability insurance are not inconsistent with the application of sovereign immunity. Under section 768.28(5), the sheriff and its agents are only entitled to limited sovereign immunity and may be required to pay up to $200,000 for claims by one person and $300,000 per incident or occurrence.

We reject Sharon Morrow's argument that there is a question of fact that precludes summary judgment. While agency status is generally a question of fact, it may be decided as a question of law "in those cases where the party opposing summary judgment is unable to point to any conflicting facts or inferences to be drawn from the facts." M.S., 881 So. 2d at 617. G4S produced the agreement and testimony by PCSO employees regarding the interaction between G4S and PCSO. Sharon Morrow did not present any conflicting evidence in opposition to the motion, and she does not challenge any of the established facts or inferences from those facts. Instead, she challenges the application of the law to the facts.

Because the undisputed evidence establishes that G4S and Izrailov are entitled to limited sovereign immunity as agents of PCSO, the trial court erred in denying G4S's motion for summary judgment. We reverse and remand with directions for the court to enter summary judgment in favor of G4S.

Reversed and remanded.

BLACK and BADALAMENTI, JJ., Concur.