# Third District Court of Appeal

## State of Florida

Opinion filed August 1, 2018.
Not final until disposition of timely filed motion for rehearing.

_____

Nos. 3D16-2221 & 3D16-2195
Lower Tribunal Nos. 14-17565 & 15-22968

_____

**Latoya Bean, et al.,**
Appellants,

vs.

**University of Miami d/b/a Miller School of Medicine, et al.,**
Appellees.

Appeals from the Circuit Court for Miami-Dade County, Samantha Ruiz-Cohen and Jerald Bagley, Judges.

Creed & Gowdy, P.A. and Bryan S. Gowdy (Jacksonville), for appellant Latoya Bean.

Center for Constitutional Litigation, PC and Robert S. Peck (Fairfax Station, VA); and Grossman Roth Yaffa Cohen, P.A., and Neal A. Roth and Rachel Wagner Furst, for appellant Fernando Vallecillo, Jr.

White & Case LLP, Raoul G. Cantero, and David P. Draigh; Fowler White Burnett, P.A., Christopher E. Knight, and Marc J. Schleier, for appellees.

Before EMAS, FERNANDEZ and LUCK, JJ.

LUCK, J.

In 2011, the legislature expanded the immunity in sections 768.28(9)(b) and (10)(f) of the Florida Statutes to cover nonprofit independent universities that agree to provide patient services at government teaching hospitals as part of an affiliation agreement. Ch. 11-219, § 3, at 3345-47, Laws of Fla. Such universities and their employees, the amendment provided, would be treated as agents of the government teaching hospital, and covered by the immunity in section 768.28, to the extent they were providing patient services consistent with the affiliation agreement.

Pursuant to sections 768.28(9)(b) and (10)(f), the University of Miami Leonard M. Miller School of Medicine entered into an affiliation agreement with the Miami-Dade County Public Health Trust – the government agency that operates Jackson Memorial Hospital. The university, based on the expanded immunity, moved to dismiss the lawsuits of two plaintiffs that were allegedly injured by university doctors who treated them at Jackson hospital. The plaintiffs responded that the amendments to section 768.28 unconstitutionally expanded sovereign immunity; violated the plaintiffs' rights to equal protection, due process, access to courts, and a jury trial; and unconstitutionally pledged the state's credit to a private university. The trial courts found that the expanded immunity did not violate the Florida Constitution. We agree, and affirm the judgments for the university and its doctors.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Case Number 16-2195:  Fernando Vallecillo

Fernando Vallecillo was born with a benign tumor on the right side of his face.  In January 2014, he went to the university's medical school for an ear-nose-and-throat consultation.  There, Vallecillo was referred to Dr. Jason Salsamendi at the university's radiology department.  Dr. Salsamendi recommended that Vallecillo have an "embolization procedure."  On February 27, 2014, Vallecillo went to Jackson to have the surgery.  Dr. Mohammad Elhammady, the surgeon, performed the embolization procedure despite evidence that Vallecillo was not amendable to it.  As a result of the surgery, Vallecillo was blinded in his right eye.

Vallecillo sued Dr. Elhammady, the university, and Jackson (the trust) for medical negligence.  The university and Dr. Elhammady answered the complaint, and alleged as an affirmative defense that they were improper defendants because they were "entitled to immunity from liability and suit under Florida Statutes §§ 768.28(9)(a) and (10)(f)."

In response to the immunity defense, Vallecillo filed a separate complaint for declaratory judgment against the university and Dr. Elhammady.  Vallecillo alleged that he had sued the university and Dr. Elhammady for medical negligence, and they "specifically raise[d] sovereign immunity as an affirmative defense" under sections 768.28(9)(b) and (10)(f) of the Florida Statutes.  Vallecillo alleged

3

that the provisions violated his Florida and federal constitutional rights to equal protection under the law, due process, access to the courts, the right to trial by jury; the prohibitions against special laws and using the state's taxing power and credit to aid corporations; and the limitations on extending sovereign immunity to private companies. The university and Dr. Elhammady answered and denied the allegations in Vallecillo's declaratory judgment complaint.

The parties filed cross-motions for summary judgment, and after a hearing, the trial court denied Vallecillo's motion for summary judgment and granted summary judgment for the defendants. The trial court concluded that "[t]he undisputed facts establish that Defendants, a Miller School of Medicine faculty member, and the University itself, fall under the ambit of Fla. Stat. Secs. 768.28(9) and (10)(f)," and are therefore, "entitled to sovereign immunity." Vallecillo has appealed.

Case Number 16-2221: Latoya and Noah Bean

In January 2012, Latoya Bean was pregnant, and went to Dr. Nelson Adams for prenatal care. During her prenatal visits between January and June, Bean had indications of preeclampsia (high blood pressure, trace albumin, and elevated protein, creatinine, and liver enzymes). Those indications continued on June 12, when she was finally prescribed medication. As the indications of preeclampsia continued the next day, Bean was admitted to Jackson hospital.

On June 18, while still in the hospital, Bean's baby showed signs of fetal distress. Dr. Rebekah Valthaty administered Misoprostol to induce birth, even though Misoprostol had not been approved by the Food and Drug Administration for that purpose and the instructions warn that using it could result in birth defects, premature birth, and uterine rupture. After the Misoprostol was administered, the baby's heartbeat was "non-reassuring," and Bean had indications of "placental abruption and/or fetal compromise."

Still, the doctors waited hours before performing a C-section. Noah Bean was born in the early morning hours of June 19. Baby Noah "required aggressive resuscitation to include stimulation, suctioning and placement on CPAP." He was "limp and suffering significant respiratory failure, requiring intubation." "[A] head ultrasound revealed grade II intraventricular hemorrhage consistent with an anoxic/hypoxic injury." Noah died on the evening of his birth.

Latoya Bean, on behalf of herself and her son, sued the university and Bean's doctors for medical negligence. The university and doctors moved to dismiss the complaint because they were "immune from suit under Section 768.28(9)(a) and 768.28(10)(f), Florida Statutes, as agents of the Public Health Trust of Miami-Dade County d/b/a Jackson Memorial Hospital." Bean argued in response that sections 768.28(9) and (10)(f) violated the Florida Constitution because the sections: were unauthorized extensions of sovereign immunity to a

private enterprise; violated her rights to equal protection and due process; improperly used the state's taxing power and credit for a private enterprise; and were impermissible special laws.

The trial court granted the defendants' motion to dismiss, concluding that Bean's complaint "establish[ed] that the moving Defendants are entities and/or individuals entitled to immunity from suit under Fla. Stat. Secs. 768.28(9) and (10)(f)." This appeal followed. On the parties' motion, we consolidated Vallecillo and Bean's appeals for oral argument.

## STANDARD OF REVIEW

"The question of statutory immunity is a legal question that we review de novo." Limones v. Sch. Dist. of Lee Cty., 161 So. 3d 384, 393 (Fla. 2015). "The constitutionality of a statute is a pure question of law" also "subject to de novo review." City of Fort Lauderdale v. Dhar, 185 So. 3d 1232, 1234 (Fla. 2016).

## DISCUSSION

In 2011, the legislature amended section 768.28, "Waiver of sovereign immunity in tort actions," to "expand[] sovereign immunity" by "providing that certain colleges and universities that own or operate a medical school[,] or any of its employees or agents providing patient services pursuant to a contract with a teaching hospital are agents of the teaching hospital and are immune from certain

6

liability for torts." Ch. 11-219, Title, at 3343, Laws of Fla. The legislature did this by amending subsection (9) and adding subsection (10)(f).

Subsection (9) provides that "[n]o officer, employee, or agent of the state or of any of its subdivisions shall be held personally liable in tort or named as a party defendant in any action for any injury or damage suffered as a result of any act, event, or omission of action in the scope of her or his employment or function." § 768.28(9)(a), Fla. Stat. (2017). The legislature amended the definition of "officer, employee, or agent" to include "any nonprofit independent college or university located and chartered in this state which owned or operates an accredited medical school, and its employees or agent, when providing patient services pursuant to paragraph (10)(f)." Id. § 768.28(9)(b)2. The new paragraph (10)(f) defined what it meant to be a nonprofit independent university which operates an accredited medical school providing patient services.

> [A]ny nonprofit independent college or university located and chartered in this state which owns or operates an accredited medical school, or any of its employees or agents, and which has agreed in an affiliation agreement or other contract to provide, or permit its employees or agents to provide, patient services as agents of a teaching hospital, is considered an agent of the teaching hospital while acting within the scope of and pursuant to guidelines established in the affiliation agreement or other contract.

Id. § 768.28(10)(f).

Months after the legislature amended 768.28, the University of Miami entered into an affiliation agreement with Miami-Dade County's Public Health

7

Trust, which operates and maintains Jackson Memorial Hospital. The affiliation agreement provided that the university's medical school, and the school's faculty, employees, and agents, would provide patient services at Jackson hospital as agents of the trust and under the trust's sole and exclusive control.

There is no factual dispute that the university and its employees and agents met the requirements of sections 768.28(9)(b) and (10)(f). The parties agree that the university is a "nonprofit independent college or university located and chartered in this state which owns and operates an accredited medical school." The parties agree that Jackson is a teaching hospital. The parties agree that the university and the trust entered into an affiliation agreement. And the parties agree that university employees and agents performed patient services at Jackson pursuant to the affiliation agreement.

The issue in this case, then, is not whether the university and its doctors met the requirements of sections 768.28(9)(b) and (10)(f). They did. Instead, the issue is whether sections 768.28(9)(b) and (10)(f) violate the Florida Constitution. Can the legislature constitutionally expand immunity to the university and its employees and agents? (No, says Vallecillo and Bean.) Do sections 768.28(9)(b) and (10)(f) violate Vallecillo and Bean's rights to equal protection, due process, access to the courts, and trial by jury? (Yes, they say.) And did the legislature unconstitutionally lend the university the benefit of the state's credit and taxing

8

power? (Yes, says Vallecillo and Bean.) We will go through each of Vallecillo and Bean's claims that sections 768.29(9)(b) and (10)(f) violate the Florida Constitution.

Article X, Section 13 of the Florida Constitution

Article X, section 13 of the Florida Constitution provides that "[p]rovision may be made by general law for bringing suit against the state as to all liabilities now existing or hereafter originating." Fla. Const. art. X, § 13. Vallecillo and Bean contend that the legislature cannot constitutionally expand immunity to the university and its employees and agents because they are not state actors subject to state control, they are not funded by the state, and the state is not on the hook for their liability.

We disagree. The Florida courts, state and federal, have extended section 768.28 immunity to private companies and their employees where there is a sufficient degree of control retained or exercised by the state entity. Here are three examples. In Stoll v. Noel, 694 So. 2d 701 (Fla. 1997), the Florida Supreme Court extended section 768.28 immunity to doctors and their professional associations that provided medical services to a state-run children's medical clinic in Broward County. Id. at 702-04. In Horn v. Volusia County, No. 6:08-CV-18-ORL-19DAB, 2008 WL 977179 (M.D. Fla. Apr. 9, 2008), the Florida federal district court extended section 768.28 immunity to a prison doctor and his company that treated

county jail detainees. Id. at *1, 6. And in G4S Secure Solutions (USA), Inc. v. Morrow, 210 So. 3d 92 (Fla. 2d DCA 2016), the Second District Court of Appeal extended section 768.28 immunity to a prison transportation company that transported prisoners from one facility to another. Id. at 93-95.

As the Florida Supreme Court explained, the question of whether an independent contractor is an "officer, employee, or agent of the state" under section 768.28(9)(a) "turns on the degree of control retained or exercised by" the state entity contracting with the private company. Stoll, 694 So. 2d at 703. "One who contracts to act on behalf of another and subject to the other's control except with respect to his physical conduct is an agent and also an independent contractor." Id. (quotation omitted).

To determine the degree of control, we look to the contract between the private company and the state agency, and any statutes or regulations that govern the relationship between the two. See Horn, 2008 WL 977179, at *6 (reviewing three provisions of the contract between Prison Health Services and the county to conclude that the private company was an agent of the state); Stoll, 694 So. 2d at 703 (reviewing the contract between the doctors and children's medical services and the Department of Health and Rehabilitative Services regulations to conclude that the doctors were agents of the state); G4S Secure Sols., 210 So. 3d at 94-95 (reviewing the contract between the prisoner transport company and the county to

10

conclude that the company was an agent of the under section 768.28(9)). In conducting this review, Florida courts have found some private companies and employees to be under the state's control such that they are agents of the state for section 768.28(9) immunity purposes, while other private companies have been found not to be controlled by the state and therefore not agents for section 768.28 immunity. Compare Stoll, 694 So. 2d at 703-04 (concluding that private doctors and their professional associations were agents of Children's Medical Services), with Jaar v. Univ. of Miami, 474 So. 2d 239, 245 (Fla. 3d DCA 1985) (concluding that university was not immune because the unambiguous terms of its contract with the public health trust did not create an agency relationship).

We conducted this agency analysis under almost identical facts in Jaar. There, as here, the plaintiff was injured at Jackson hospital by a University of Miami faculty member and three of the university's medical residents who were providing medical services to Jackson patients pursuant to an affiliation agreement between the university and the hospital. Jaar, 474 So. 2d at 241. The injured plaintiff sued the faculty member, the three medical residents, and the university, alleging medical negligence. Id. The defendants all claimed they were agents of the trust and immune under section 768.28(9). Id. We agreed as to the university faculty member and medical residents. Id. at 244.

> The contracts between [the faculty member] and the University and between the University and the Trust set forth the duties and

obligations of the parties and define their legal relationships. [The faculty member] is employed by the University as a full-time medical faculty member. The University assigned [him] to head the hospital's burn unit pursuant to the terms of contracts between the University and the Trust. The contracts require the University to provide medical care to hospital patients and to supervise residents in their treatment of patients.

The University assumes additional responsibility in the treatment and care of fee paying patients. The indemnification clause contained in the contract provides Trust indemnification of the University for claims arising out of the treatment of non-paying patients. Conversely, the indemnification clause establishes the parties' intent to delegate sole responsibility to the University for the care of paying patients, such as [the plaintiff].

Id. at 242-43 (footnotes omitted). Because the faculty member and the residents were the trust's "employees or agents and [] their negligent treatment of [the plaintiff] was performed within the scope of their employment," we concluded they were "entitled to immunity from liability." Id. at 244 (citing § 768.28(9)(a), Fla. Stat.).

As to the university, we agreed it "would be immune only if it were an agent of the Trust." Id. at 245 (emphasis added). But we found the university was not an agent of the trust because

[t]he relationship between the University and the Trust is created by the clear and unambiguous terms of their contracts which, as a matter of law, demonstrate the absence of an agency relationship between them. The University and the Trust are two independent entities joined for the purpose of providing health and medical services to the public. Section 1 of the[ir Basic Affiliation Agreement], entitled "Autonomous Nature of Public Health Trust," and ensuing sections specify that neither party acts as agent for the other. In addition, the

> contract provisions render each party liable for its proportionate share of the parties' joint expenses, and demonstrate the parties' intent to refrain from entering an agency relationship.

Id. (footnotes and citation omitted). "Thus," we said, "the University is not entitled to benefit from sovereign immunity protections." Id. at 246.

If nothing had changed since 1985, then that would end the matter for section 768.28 immunity purposes. The university doctors who treated Vallecillo and Bean pursuant to the affiliation agreement would be agents of the trust, and therefore, entitled to the immunity protections under sections 768.28(9)(b) and (10)(f). The university would not be an agent of the trust because the trust would not have retained or exercised a sufficient degree of control to trigger section 768.28(9) immunity.

But in 2011, the university and the trust entered into a new affiliation agreement governing their relationship. The 2011 agreement provided that:

- "the University and any faculty member . . . or other employee or agent of the University while acting pursuant to this Agreement does so as an agent of the Trust under the sole direction of and under the full control of the Trust."

- "the Trust shall exclusively exercise all powers of governance, operation, management and control, including . . . providing a single standard of medical care . . . ."

13

- the trust's powers included "[d]etermining and monitoring any and all activities and the manner of their performance and operation which shall take place in the Jackson Hospital System, including determining who shall provide Patient Services to patients and who shall supervise and train Residents of the Trust."

- the trust's powers included "[p]rescribing and enforcing all policies, Bylaws, Rules and Regulations."

- university faculty members and employees and agents are "to provide Patient Services as agents of the Trust pursuant to this Agreement and pursuant to Trust Guidelines under the Trust's direction and control."

- the trust is "responsible for delivering all Patient Services" to Jackson hospital patients and "classifies each patient according to funding status in accordance with its policies and procedures."

- the trust "[s]hall have final authority and responsibility for admitting patients within the Jackson Health System in compliance with existing laws."

- the trust "shall have sole authority and responsibility to allocate resources within the Jackson Health System."

14

- the trust "[s]hall . . . have final and absolute authority over all care and treatment provided to patients, and can refuse to allow a course of treatment for any patient for medical, policy, or budgetary reasons."

- the trust "[s]hall have responsibility for and authority to supervise, train, and assign Resident Physicians to provide care to patients."

- while the university and its employees and agents are providing patient services at Jackson hospital pursuant to the agreement, they "shall act solely for the Trust and not for the University."

- the university's education of its students and medical research while at Jackson is "subject to the policies, Bylaws, Rules and Regulations of the Trust."

- the trust "retain[s] and exercise[s] full and exclusive authority to credential, appoint, reappoint, revoke, modify, suspend, and terminate clinical privileges and membership" on the trust medical staff.

- "the President of the Trust shall have final and exclusive authority to appoint all Chiefs of Service."

As to the university doctors sued by Vallecillo and Bean, nothing has changed for them. Just as they were employees and agents of the trust in Jaar, 474 So. 2d at 244 ("As employees or agents of the Trust, Dr. Ward and the residents are entitled to immunity from liability."), they were agents of the trust while

providing patient services to Vallecillo and Bean. If anything, the 2011 agreement gave the trust more control over the university doctors and employees. Compare id. at 242-43 & nn.2-6 (the affiliation agreement in Jaar), with (R.368-82) (the 2011 affiliation agreement).

As to the university, the 2011 agreement retained and exercised a degree of control sufficient to make the university the trust's "agent" for section 768.28(9)(a) immunity. Just as in Stoll, the university agreed to abide by the trust's bylaws, rules, and regulations. See 694 So. 2d at 703 ("CMS requires each consultant, as a condition of participating in the CMS program, to agree to abide by the terms published in its HRS Manual and CMS Consultant's Guide which contain CMS policies and rules governing its relationship with the consultants."). Just as in Stoll, the university agreed that the trust was responsible for providing patient services; had final authority over all care and treatment; and "could refuse to allow a course of treatment for any patient for medical, policy, or budgetary reasons." See id. ("The HRS Manual and the Consultant's Guide demonstrate that CMS has final authority over all care and treatment provided to CMS patients, and it can refuse to all a physician's consultant's recommended course of treatment of any CMS patient for either medical or budgetary reasons."). Just as in Horn, the university agreed that the trust set the standard of care, and had the authority to prescribe bylaws, rules, and regulations. See 2008 WL 977179, at *6 ("Section

16

2.05 is entitled "Standard of Care" and requires PHS to meet or exceed several standards of care, including the Florida Model Jail Standards."). Just as in <u>Horn</u>, the university agreed that the trust would determine the activities and manner in which patient services were performed at Jackson hospital. <u>See</u> <u>id.</u> ("[T]he state has authority over the scope of [Prison Health Services'] work."). And just as in <u>G4S</u>, the university agreed that the trust would supervise the training of medical residents; the university would teach its students consistent with trust rules and regulations; and the trust had the authority to deny privileges to any university doctor. <u>See</u> 210 So. 3d at 94 (The county "has the ability to have a G4S employee fired at will." The county "conducts the training of G4S employees, and the employees are trained according to [county] procedures.").

Perhaps the biggest difference between the affiliation agreement in <u>Jaar</u>, and the 2011 affiliation agreement, is that the 2011 agreement is clear that the university is the trust's agent. In <u>Jaar</u>, the bilateral agreement "specif[ied] that neither party acts as agent for the other." 474 So. 2d at 245. And the agreement repeatedly "demonstrate[d] the parties' intent to refrain from entering an agency relationship." <u>Id.</u>

The 2011 affiliation agreement has the opposite intent. The agreement provided that "the University . . . while acting pursuant to this Agreement does so as an agent of the Trust," and "the University . . . [is] deemed to be [an] agent[] of

the Trust pursuant to this agreement and Trust Guidelines in accordance with F.S. Section 768.28." The Florida Supreme Court found a similar acknowledgment of an agency relationship as support for its conclusion that the private company was an agent of the state under section 768.28. See Stoll, 694 So. 2d at 703 ("Our conclusion is buttressed by HRS's acknowledgement that the manual creates an ageny relationship between CMS and its physician consultants . . . ."); see also Horn, 2008 WL 977179, at *6 ("Section 2.03 of the contract demonstrates that the parties expressly intended to create an agency relationship, apparently for the very purpose of bringing PHS and Dr. Hager under the protection of section 768.28(9).").

The 2011 agreement showed that the trust retained and exercised a degree of control over the university such that it created an agency relationship. Because the university was the trust's agent for purposes of providing patient services at Jackson hospital, the legislature's decision to expand immunity in sections 768.28(9)(b) and (10)(f) to cover the university as the trust's agent is consistent with Stoll, and does not violate article X, section 13 in the Florida Constitution.[1]

---

[1] Our conclusion that the university is the trust's agent when it is providing patient services pursuant to the 2011 affiliation agreement is based on the record in this case. We express no opinion on whether a new affiliation agreement between the university and the trust, or an altogether different relationship between a private university and a teaching hospital, would have the government hospital retaining and exercising the degree of control necessary to create an agency relationship that would be a constitutional expansion of section 768.28 immunity.

18

The Florida Constitution provides that "[a]ll natural persons, female and male alike, are equal before the law," and "[n]o person shall be deprived of life, liberty or property without due process." Fla. Const. art. I, §§ 2, 9. These are, in order, our state's equal protection and due process clauses. Vallecillo and Bean contend that sections 768.28(9)(b) and (10)(f) violate the equal protection and due process clauses because they are nothing more than an unconstitutional cap on medical malpractice damages, and the statutes treat medical malpractice plaintiffs differently depending on whether they are treated by trust or university doctors.

We rejected the same equal protection and due process arguments in Jaar:

> We find no merit in appellants' argument that due process and equal protection considerations preclude the application of sovereign immunity to shield the doctors from liability in this cause. Florida courts have ruled the immunity statute constitutional when applied to a physician who, within the scope of his governmental employment, negligently caused injury to another.

474 So. 2d at 244. The Florida Supreme Court and the other district courts have also rejected due process and equal protection challenges to section 768.28 immunity. See Cauley v. City of Jacksonville, 403 So. 2d 379, 387 (Fla. 1981) ("[W]e hold that the statute clearly relates to a permissible legislative objective and is neither discriminatory, arbitrary, nor oppressive in its application. The statute does not violate the right to due process . . . . It provides a fair means of recovery against governmental entities for the negligent acts of their employees and

officials. For the reasons expressed, we affirm the trial court and uphold the constitutional validity of section 768.28(5), Florida Statutes (1977)."); Campbell v. City of Coral Springs, 538 So. 2d 1373, 1375 (Fla. 4th DCA 1989) ("We also find no merit in appellants' claim that the statute is unconstitutional as a denial of equal protection. The legislature has the discretion to place limits and conditions upon the scope of the sovereign immunity waiver."); Jetton v. Jacksonville Elec. Auth., 399 So. 2d 396, 399 (Fla. 1st DCA 1981) ("As to due process, we are not prepared to find that the legislature had no rational basis for imposing a $50,000 recovery limit if that limit was considered sufficient to permit full recovery in the vast majority of the cases. . . . For the same reasons we find no violation of equal protection, there being a rational relationship between the statutory classifications of tort victims and the object of the legislation." (footnote and citations omitted)). We must follow Jaar until it has been overruled by the en banc court or the Florida Supreme Court. See State v. Washington, 114 So. 3d 182, 188-89 (Fla. 3d DCA 2012) ("This panel is not free to disregard, or recede from, that decision; only this Court, sitting en banc, may recede from an earlier opinion.").

## Article I, Section 21

The Florida Constitution provides that "[t]he courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." Fla. Const. art. I, § 21. Vallecillo contends that sections

20

768.28(9)(b) and (10)(f) unconstitutionally restrict access to the courts by placing a cap on damages.

The Florida Supreme Court and the other district courts have rejected access-to-court challenges to section 768.28 immunity. See Cauley, 403 So. 2d at 387 ("[W]e hold that the statute clearly relates to a permissible legislative objective and is neither discriminatory, arbitrary, nor oppressive in its application. The statute does not violate the right to . . . access to the courts . . . . It provides a fair means of recovery against governmental entities for the negligent acts of their employees and officials. For the reasons expressed, we affirm the trial court and uphold the constitutional validity of section 768.28(5), Florida Statutes (1977)."); State Dep't of Corrs. v. Koch, 582 So. 2d 5, 8 (Fla. 1st DCA 1991) ("[S]everal courts have examined the constitutionality and scope of § 768.28(9), Florida Statutes, and have found that § 768.28(9) did not abolish the right of an injured person to sue and recover based on the liability of a negligent employee; it merely required that the action be maintained against the public employer as the sole, substitute defendant."); Campbell, 538 So. 2d at 1374 ("[P]laintiffs have failed to show that they would have had a right to bring this action prior to adoption of the declaration of rights in the Florida Constitution. In any event, section 768.28(9)(a) does not abolish causes of action. Rather, the statute reasonably arranges and restricts the classes of

21

potential defendants based on the nature of the claims as part of an overall statutory scheme."); White v. Hillsborough Cty. Hosp. Auth., 448 So. 2d 2, 3 (Fla. 2d DCA) ("Appellant forcefully argues that she has been deprived of her right to "redress of any injury" guaranteed by Article I, section 21, of the Florida Constitution. . . .   In effect, appellant's cause of action has been limited by a cap of $50,000 per claimant/$100,000 per occurrence.   While this is a matter of concern, it is not a sufficiently compelling reason to render the statute unconstitutional.   As discussed in Kluger, even where a cause of action is reduced, as opposed to being destroyed, it is not essential that the legislature provide a substitute remedy." (footnote and citation omitted)), cause dismissed, 443 So. 2d 981 (Fla. 1983), cited in Jaar, 474 So. 2d at 244 ("Florida courts have ruled the immunity statute constitutional when applied to a physician who, within the scope of his governmental employment, negligently caused injury to another.").   We must follow Cauley until the Florida Supreme Court overrules it.   See State v. Lott, 286 So.2d 565, 566 (Fla. 1973) ("[T]he District Courts of Appeal follow controlling precedents set by the Florida Supreme Court."); Hoffman v. Jones, 280 So. 2d 431, 440 (Fla. 1973) ("[A] District Court of Appeal does not have authority to overrule a decision of the Supreme Court of Florida. . . .   [T]he decision of this Court shall prevail until overruled by a subsequent decision of this Court.").

Article I, Section 22

22

The Florida Constitution provides that "[t]he right of trial by jury shall be secure to all and remain inviolate." Fla. Const. art. I, § 22. Vallecillo contends that the limit on damages in section 768.28 unconstitutionally deprives him of his right to have a jury determine damages.

The Florida Supreme Court has rejected a right-to-jury-trial challenge to section 768.28 immunity. See Cauley, 403 So. 2d at 387 ("While the section does limit recovery allowable against municipalities, it substantially broadens recovery allowable against state governmental entities generally. . . . In conclusion, we hold that the statute clearly relates to a permissible legislative objective and is neither discriminatory, arbitrary, nor oppressive in its application. The statute does not violate the right to . . . jury trial . . . . It provides a fair means of recovery against governmental entities for the negligent acts of their employees and officials. For the reasons expressed, we affirm the trial court and uphold the constitutional validity of section 768.28(5), Florida Statutes (1977)."). We are, again, bound by Cauley until the Court tells us otherwise.

## Article VII, Section 10

The Florida Constitution provides that "[n]either the state nor any county, school district, municipality, special district, or agency of any of them, shall . . . give, lend or use its taxing power or credit to aid any corporation, association, partnership or person." Fla. Const. art. VII, § 10. While there are some

23

exceptions, the Constitution generally bans "the assumption by the public body of some degree of direct or indirect obligation to pay a debt of the third party." State v. Hous. Fin. Auth. Of Polk Cnty., 376 So. 2d 1158, 1160 (Fla. 1979). Vallecillo and Bean contend that sections 768.28(9)(b) and (10)(f) violate this provision by lending the state's taxing power and credit to a private university.

We don't see it. To qualify as an "agent of the teaching hospital," section 768.28(10)(f) requires that the university enter into "an affiliation agreement or other contract" to provide patient services to the teaching hospital. § 768.28(10)(f), Fla. Stat. The contract, section 768.28(10)(f) continues, "must provide for the indemnification of the teaching hospital, up to the limits set out in [section 768.28], by the agent for any liability incurred which was caused by the negligence of the college or university or its employees and agents." Id.

The 2011 affiliation agreement between the university and the trust had such a provision. The 2011 agreement provided that

> To the extent allowed by law pursuant to section 768.28(10)(f), Florida Statutes, the University shall indemnify the Trust and Miami-Dade County and their respective Trustees, Board Members, Commissioners, officers, employees, agents, agencies and instrumentalities as provided in Chapter 768, Florida Statutes for any liability incurred, which was caused by the negligence of the University or its employees and agents. . . .
> The University shall be responsible for providing legal representation with respect to any injury caused or alleged to have been caused by the University or the employee or agents and shall be responsible for all legal costs arising out of such representation.

Because of the indemnification requirement in the statute, which made its way into the 2011 affiliation agreement, the state's taxing power and credit was not on the line when Vallecillo and Bean were injured. The university agreed to pay (indemnify) whatever amount that was imposed on the state pursuant to section 768.28, and to pay any attorney's fees and costs that result from litigation. Sections 768.28(9)(b) and (10)(f) make it so the state will pay nothing as a result of its agreement with the university, and the state does not have to give or use its credit or taxing power to benefit a private entity. The state did not assume the private university's debt; sections 768.28(9)(b) and (10)(f) require that the financial obligation run the other way – from the state to the private university. There was no violation of article VII, section 10.

## CONCLUSION

The legislature's 2011 amendments to section 768.28, contained in subsections (9)(b) and (10)(f), did not violate the sovereign immunity, equal protection, due process, access to courts, jury trial, and private debt provisions of the Florida Constitution. We affirm the summary judgment for the university and Dr. Elhammady in case number 3D16-2195, and the judgment for the university and Drs. Ahmed and Maguire in case number 3D16-2221.

Affirmed.

25